Argued February 9, affirmed April 23, petition for rehearing
denied May 27, 1970. Petition for review allowed by
Supreme Court August 18, 1970. See later
volume of Oregon Reports

## STATE HIGHWAY COMMISSION, *Appellant, v.* HOOPER ET AL, *Respondents.*

468 P2d 540

*Leslie B. Hampton,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Glen V. Sorensen, Assistant Attorney

General, G. E. Rohde, Assistant Attorney General and Chief Counsel for the Oregon State Highway Commission, and Lee Johnson, Attorney General, Salem.

*George W. Mead*, Portland, argued the cause for respondents. With him on the brief was James G. Heltzel, Salem.

Before SCHWAB, Chief Judge, and FORT and BRANCHFIELD, Judges.

BRANCHFIELD, J.

This is an action brought to condemn, for highway purposes, certain real property owned by the defendants Hooper, hereafter referred to as the defendants. After a verdict and judgment, the Highway Commission has appealed, claiming that the trial court erred in excluding certain testimony offered by the plaintiff, in admitting certain testimony offered by the defendants and in failing to give certain requested instructions. The basic question presented by the plaintiff's assignments of error is the method of valuation to be used in determining just compensation when the parcel being taken is part of a larger tract, and when the defendant does not claim damages to the remainder.

In this proceeding the Highway Commission condemned 2.4 acres of the approximately 150 acres owned by the defendants in the southeasterly quadrant of the intersection of the Pacific Highway (Interstate 5) with the Hillsboro-Silverton Highway, also known as Highway 214. This intersection is known as the Woodburn interchange. The property was acquired as part of the plan to transform that interchange into a full diamond interchange for improved exit from, and access to,

Interstate 5. Of the 150 acres owned by the defendants, 52 acres (including the land taken) were zoned ID (Interchange Development) or commercial. The balance of the land was zoned RA (Residential and Agricultural). It is agreed by the parties that the defendants are claiming no damages to the remaining land by the taking of the 2.4 acres. Defendants' remaining property fronts upon Highway 214. The part taken is contiguous to a frontage road which connects with Highway 214. The improvement contemplated by the Highway Commission includes relocation of the frontage road to the southeasterly edge of the parcel taken, contiguous to the remaining land of the defendants and with access thereto from defendants' lands. Defendants contend, and the commission does not deny, that the land taken is a self-sufficient economic unit. Its highest and best use is unaffected by severance from the remainder of defendants' property.

The commission sought to introduce evidence of the "before and after" value of the entire 150 acre tract. It contended that subtracting the value of defendants' property remaining after the condemnation from the value of the entire tract before the condemnation represented the true measure of compensation to which the defendants were entitled. Defendants objected to evidence of valuation by this method, claiming that this method would reduce the fair cash market value of the land taken by the amount of benefit resulting to the remaining land because of the highway improvement. Defendants assert that special benefits may not be deducted from the award for the land taken but may be offset only against damages to the remainder and since the defendants claim no damages the state could not, directly or indirectly, introduce evidence of benefits.

■ In *State Highway Com. v. Bailey et al*, 212 Or 261, 277, 319 P2d 906 (1957), the court said:

"* * * [T]he question first arises as to the legal effect to be given to special benefits in the trial of a condemnation action. It is now firmly established by our decisions that such benefits may be set off or employed to reduce the damages to the remainder of the tract not taken, but cannot be used to adversely affect the right of the owner to receive the fair cash market value of the land actually taken. The defendants were entitled to receive the fair cash market value of the land actually taken for highway use. * * *"

Thus, the Supreme Court clearly enunciated the law in Oregon to be that special benefits cannot be offset against the value of the land taken.

The "before and after" rule has been widely used in Oregon and other jurisdictions. But, with the increasing complexities of modern conditions, that method of valuation may not fit every case.

"The only difficulty experienced in the practical application of the before and after rule has been with relation to the question of set-off of benefits. Obviously, determination of the value of the remainder area is based to some extent upon the benefits conferred upon it as a result of the use of the land taken for the project for which the condemnation was brought. The benefits may be of such magnitude that the consequential damages to the remainder area are completely cancelled out and an additional sum deducted from the market value of the land actually taken. In other words, the resulting award would be less than the value of the land taken standing alone. In those jurisdictions where set-off of benefits is allowed as against the value of the land taken there is no problem. However in the great majority of jurisdictions, such set-off is not permissible. * * *" 4 Nichols, Eminent Domain, (Rev. 3rd Ed) 555, § 14.232(1), at 555.

In *Territory of Hawaii v. Adelmeyer*, 45 Hawaii 144, 363 P2d 979 (1961), the court dealt with a partial taking for a highway widening project. A statute in the Territory of Hawaii required the court to follow the same rule Oregon adopted in *State Highway Com. v. Bailey*, supra, to the effect that special benefits cannot be offset against the value of the land taken. The sole issue in *Adelmeyer* was the market value of the lands taken. The plaintiff there contended that the only acceptable method of arriving at just compensation is to value the whole first, and on that basis assign a value to the part condemned. The court interpreted this contention as an application of the "before and after" method of valuation. At page 983 the court said:

"\* \* \* Theoretically, the 'before and after' method is ideal as it is simple and complete. It includes in one lump sum the components of just compensation—value of the land taken plus severance damages to the remainder less special benefits arising out of the taking. All these elements of just compensation are inseparately moulded together in the result reached under the 'before and after' method.

"The methods of valuation devised for partial taking cases presuppose benefits or damages to the remainder. See 1 Orgel, Valuation Under Eminent Domain, 2d ed., c.4. Where, as here, there are no benefits or damages to the remainder, just compensation becomes the fair market value of the land taken. But as seen it is impossible to segregate the various items of value, damages and benefits in the result obtained through employment of the 'before and after' method of valuation.

"The ideal of the 'before and after' method of valuation has given way to practicality in those jurisdictions, like Hawaii, which limit set off of special benefits to severance damages alone, in highway widening or realignment situations. R.L.H. 1955, § 8-21. \* \* \*"

In *State v. Meyer*, 391 SW2d 471, (Tex Civ App 1965), affirmed 403 SW2d 366, 375 (Tex 1966), the court said:

"The record herein establishes that the 14.9456 acre tract of land condemned by the State is a self-sufficient economic unit, independently of the remainder of appellees' 103 acre tract. All of the testimony developed on the bills of exception show that such parcel is the most valuable portion of the larger tract. The long-established rule in this State, recognized by both parties herein, precludes the benefit accruing to the remainder of appellees' tract as a result of the taking of the 14.9456 acre parcel which was formerly a part of the integrated whole from being considered in fixing the value of the parcel actually taken. *Dulaney v. Nolan County*, 85 Tex. 225, 20 S.W. 70 (1892); *Travis County v. Trogden*, 88 Tex. 302, 31 S.W. 358 (1895); *State v. Carpenter*, 126 Tex. 604, 89 S.W. 2d 194 (1936). The last-cited case is also authority for the proposition that where the landowner does not ask for damages for a decrease in value of his remaining land by reason of the taking of the strip in question, that evidence as to enhancement of the value of the land not taken is inadmissible." 391 SW2d 471, 479-80 (1965).

Texas permits the "taking" to be valued as part of the whole area only when the land taken is not a self-sufficient economic unit. See *City of Tyler v. Brogan*, 437 SW2d 609 (Tex Civ App 1969).

The State of Arizona is bound to the same rule as in *Bailey*, supra. In *Deer Valley Industrial Park D. & L. Co. v. State*, 5 Ariz Ap 150, 424 P2d 192, 196 (1967), the court said:

"In the majority of the jurisdictions, either by statute, as in Arizona, or by court decision, the state must pay for the value of the property taken, regardless of the benefits to the remaining property.

1 Orgel on Valuation Under Eminent Domain, (2d ed.) § 50, pp. 234-35; 4 Nichols on Eminent Domain, (3d ed.) § 14.23 pp. 528-42."

The Highway Commission here relies in part on Jahr, Eminent Domain, Valuation and Procedure, § 103, page 139:

> "The overwhelming weight of authority on the question of valuing the part taken in such a case is that the part acquired is not limited in value as though it were an isolated piece, but its value is determined on the basis of an integral part of a larger area in the same ownership."

But the "such a case" referred to in Jahr is one in which a railroad desires merely a narrow strip of vacant land for a right of way. The example given assumed that the strip taken would have very little value standing alone, whereas both parties in the case at bar recognize that the land taken is commercially valuable as a self-sufficient economic unit. At page 140, Jahr recognized a danger inherent in universally determining the value of the land taken as part of the whole:

> "The jury should be cautioned against including severance damages in reaching a value of the part taken * * *."

The plaintiff has cited cases from other jurisdictions which have held that the entire property must be valued before the taking and that the award is to be based upon the diminution in the value of the property by the taking. Other cases cited have required that the land taken be valued as a proportionate part of the whole. Those cases are inconsistent with the holding in *Bailey*, supra.

3 Nichols, Eminent Domain, (Rev 3d Ed) 90, 91, states:

> "In most of the remaining states in which the

question has arisen it is held that the setting off of benefits to the remaining land from the compensation for the land actually taken is a violation of the fundamental requirement that compensation must be in money, and that, as benefits are not money, a statute which authorizes the payment of any less sum than the market value of the land actually taken is unconstitutional. * * *"

The rule seems to have evolved from practical considerations.

"While there is no answer in legal theory to the logic of the arguments in favor of the doctrine that special benefits can be set off from the entire compensation, there can be no doubt that the tendency in recent years has been away from that principle and toward the adoption of the rule that the land taken, at least, must be paid for in money without consideration of benefits to the remaining land. The development of the later rule is undoubtedly explained by the fact that the propensity of many American communities to be over-sanguine in regard to the beneficial results of projected public improvements had resulted in the taking of much valuable private property for which the owners never received any compensation other than anticipated benefits which never accrued. It was a reaction to this injustice that led to the ready adoption of a rule which, while in theory unsound, would as a matter of practice bring about a more equitable result, and in the cases in which injustice resulted, would distribute the effects of it upon the public at large." 3 Nichols, Eminent Domain, (Rev 3d Ed), 97, 98.

■ It was proper for the trial court to limit appraisal evidence solely to the value of the property taken, where, as here, it is agreed by both parties that the land taken is a self-sufficient economic unit and no damages were claimed to the remainder. All assign-

ments related to the one basic question of the method of valuation to be used. There is therefore no need to discuss them separately.

Affirmed.