Argued October 21, 1930; reversed March 3, 1931

## In re LEBANON-SHEA HILL SECTION OF SANTIAM HIGHWAY
## PAPE et al. *v.* LINN COUNTY
### (296 P. 65)

*John H. Carson*, of Salem (L. G. Lewelling, District Attorney, of Albany, and Carson & Carson, of Salem, on the brief), for appellant.

*Willard Marks*, of Albany (Hill, Marks & McMahan and Clark S. Kendall, all of Albany, on the brief), for respondents.

RAND, J. This is an appeal by Linn County from a judgment awarding damages for the establishment of a public highway across respondents' premises. The record shows that the road was established by resolution of the county court of said county; that the county court offered to pay respondents $1,000 for the necessary right of way thereover; that, upon respondents' refusal to accept said offer, it appointed a board of road viewers which assessed the damages at $1,450; that respondents then filed with the county court a petition claiming damages in the sum of $4,995, which petition was disallowed except for the sum of $1,450; that respondents appealed therefrom to the circuit court for Linn County; that the cause was thereupon transferred to the circuit court for Marion county for trial and was tried to a jury; that respondents had verdict and judgment for $3,327, from which the appeal was taken.

It appears from the testimony that respondents owned and resided upon a farm near Lebanon, consisting of 155 acres of land of which 80 acres were in cultivation, 25 acres in timber and 50 acres in pasture; that before the establishment of the road the land was rectangular in shape; that the road as located over respondents' land is 80 feet in width and extends diagonally over the land for a distance of some 2,900 feet and includes within its boundaries 5.26 acres of

land and divides the farm into two nearly equal parts and passes between the house and barn; that, except for a corner of the woodshed, which extends over one of the boundaries of the right of way for about eighteen inches, none of the buildings are on the right of way; that there was a small orchard on the place across which the road is located, causing the loss of some twelve or fourteen fruit trees, there now being a few fruit trees on each side thereof; that the house at its nearest point is twenty-five feet from the nearest boundary of the road; that there are some valuable shade trees near the house but none of them are on the right of way, or affected by the road. One of the items of damage claimed by respondents in their petition filed in the county court and which they attempted to establish by proof upon the trial was the cost of moving the dwelling house and outbuildings to the opposite side of the road, the leveling and preparation of the site therefor, and the drilling of a new well at the new site, and the loss of the use of the shade trees which now shade the house at its present site. In support of this claim, John A. Pape, one of the respondents, testified as follows:

"Q. I presume you understand as a matter of common knowledge, as everybody in court knows, that this is designed to be a main trunk highway, isn't it? A. Yes. Q. And so constructed to carry a very heavy volume of traffic? A. Yes. Q. And what is the fact as to whether or not it would be practical for you to live with your children so near the road? A. It wouldn't be. Q. Have you selected a favorable or appropriate place on the other side to which the buildings could be moved? A. Well, a pretty good place, yes. Q. And how far is that from their present location? A. Well, it would be about 350 feet. Q. Is that the nearest location where you could place your buildings having reference to the location of the highway, the topography

of the ground and also the fact that you don't want to get the back door of the house in the front door of the barn? A. Yes, sir.''

He then testified that the cost of removing the buildings to the new site would amount to $575, the preparing of the new site, $150; the drilling of a new well, $170; and that, upon the removal of the house, he would lose the use of the shade trees which would cause him to sustain an additional loss of $1,000.

The only other evidence offered for the purpose of showing any reason for a change in the location of the house was that with the road between the house and the barn, members of respondents' family, in going from one to the other, might be run over and injured by passing automobiles, and that because the house is now located on the south of the road and the prevailing winds in the summer are from the north, dust from the road would be blown into the house. Based wholly upon this testimony and without proof of any other facts, the learned trial court instructed the jury as follows:

''* * * You may also properly take into consideration the reasonable necessity of the removal of petitioners' dwelling house and other buildings to another location, together with the reasonable cost of such removal, if you find the removal to be reasonably necessary, and the reasonable cost of refitting in another locality for further use and occupancy by the petitioners, including the reasonable value and cost of a well, if found necessary, and the placing of the same in shape to be used conveniently together with reasonable cost and value of placing the yard and yard lot at such removed location in a reasonable condition for occupancy, having in mind at all times that the petitioners are entitled to be made as nearly whole as possible after the taking of the road as they were before.

''The petitioners claim that they will be deprived of certain trees now growing in and about their dwelling, and that the same are valuable and necessary for the use

and enjoyment of their home, and for beautifying and adorning the same, and for furnishing shade upon hot days. You will take these facts into consideration in determining the reasonable market value of these trees under the circumstances and the condition in which they are and have been used by the petitioners, and if you find by reason of the construction of the road and the necessary removal of their buildings, if you should find said buildings should be removed, they will be deprived of the use and benefit of these trees, you should award them such compensation in money as will represent the reasonable value of said trees under the circumstances and conditions stated."

The county assigns as error the giving of both instructions.

■ Even if testimony tending to show that the establishment of a road between the house and barn might involve a risk or danger in crossing the road was not too remote or speculative, or that dust might be blown from the road into the house, would entitle the jury to consider those facts in determining the extent of the depreciation in the market value of the remainder of the land, yet they would be wholly insufficient to create a liability upon the part of the county to pay for moving a house not on the right of way to another location. It was error, therefore, for the court to charge the jury that the expense of moving the house, preparing a new site and drilling a well, and also compensation for the loss of the use of shade trees around the house could be included in their verdict.

In *Beekman v. Jackson County,* 18 Or. 283 (22 P. 1074), it was held that the just compensation guaranteed by the constitution to the owner of lands, where a part was taken for a public road, was:

"* * * The reasonable value of the land taken, the effect of the taking upon the remainder, the manner of the location of the road, the necessity it may

occasion for the removal or building, of fences, and any other material inconvenience or burden it may create, should be fairly considered, and the sum of the several items should, be allowed the owner, subject to any reduction on account of special benefits he may derive therefrom. But before the jury are authorized to make any such reduction, the evidence must show that the remainder of the land will gain some peculiar advantage by the opening of the road, and they should be made to understand that they cannot arbitrarily set off benefits against damages unless the former pertain to the character here indicated.''

██ Appellant's counsel criticize this decision in so far as it seems to hold that the sum of the specific items of damage proved represents the amount which the owner is entitled to recover in cases of this character as contrary to the true rule. To instruct a jury to take into consideration every element of damage which tends to make the market value of the whole tract less than it was before the road was established is proper, but to instruct the jury that the amount of its verdict should be determined by adding the amount fixed by it for each specific item of damage and then to add all said sums together and return a verdict for the total amount would in many instances be an improper manner of arriving at a verdict, for whatever tends to make the land less valuable after the location of the road than it was before is a proper element of damage and should, when shown to exist, be considered by the jury in determining its verdict. There might, in a given case, be numerous elements of damage claimed which, upon a careful consideration, would be found to overlap and duplicate other elements separately considered. As said by the Supreme Court of Iowa in *Kosters v. Sioux County*, 195 Iowa 214 (191 N. W. 993), the owner ''could not recover the sum total of various specific items, such as the cost of fence, the cost of a

passageway and other similar items. The damage is to the farm as a whole and must be awarded in a lump sum." See also *Henry v. Dubuque, etc., Ry. Co.,* 2 Iowa 288.

"Where, by taking a part of a tract, additional fencing will be rendered necessary in order to the reasonable use and enjoyment of the remainder, as it probably will be used in the future, and the burden of constructing such additional fence is cast upon the owner of the land; then the burden of constructing and maintaining such fence in so far as it depreciates the value of the land, is a proper element to be considered in estimating the damages. In some of the cases cited an allowance was made for the cost of fencing as a specific item, and the language of many of the decisions seems to warrant the same view. But this is clearly not correct, unless such an allowance is required by the statute under which the proceedings are had. It is a question of damages to the land, as land. If, in view of the probable future use of the land, additional fencing will be necessary, of which the jury or commissioners are to judge, and the owner must construct the fence if he has it, then the land is depreciated in proportion to the expense of constructing and maintaining such fencing. Nothing can be allowed for fence, as fence. The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it. Evidence of the cost of suitable fencing is competent as affording a means of arriving at the extent of the burden": 2 Lewis Eminent Domain (3d Ed.), § 741.

"*   *   *  The just compensation required by the Constitution to be made to the owner is to be measured by the loss caused to him by the appropriation. He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public": *Bauman v. Ross,* 167 U. S. 548 (17 S. Ct. 966, 42 L. Ed. 270).

■ Where a part only of a larger tract of land is taken for a public road under the power of eminent do-

main, the owner is entitled to the market value of the land actually taken and also to an amount equal to the depreciation in the market value of the remainder of the land caused by the road. This market value is the amount which the land would bring if it were offered for sale by one who desired but was not obliged to sell and was bought by one who was willing but not obliged to buy. The true measure of damage in such case is "the actual cash market value of the strip taken and the depreciation in market value of that portion of the tract not actually included in the right of way": *Portland-Oregon City Ry. Co. v. Penney,* 81 Or. 81 (158 P. 404).

In determining the amount of depreciation in the market value of the remainder of the land, respondents were entitled to have the jury consider the inconvenience which will result and the additional expense which will be incurred in farming the residue of their land by reason of the road cutting the place diagonally and dividing it into two parts; also, the inconvenience of being compelled to transport crop, machinery and implements from one part of the land to the other as well as the inconvenience of being compelled to cross the road in going from the house to the barn, and all other inconveniences resulting by reason of the road. All of these elements should be considered in determining the depreciation in the market value of the remainder of the land which will result from the road. See *Idaho & W. Ry. Co. v. Coey,* 73 Wash. 291 (131 P. 810).

██ Since the judgment must be reversed because of the error to which we have referred and a new trial will be necessary, in order to avoid further error, we will refer to certain matters appearing in the transcript of testimony. There was evidence tending to

show that the road in question extends through a small orchard on respondents' land and included within the boundaries of the road some twelve or fourteen fruit trees, for the loss of which respondents claimed damages in the sum of $250 in addition to what they claimed was the market value of the land actually taken. Trees growing on the land actually taken are a part of the realty and their value cannot be considered separately and apart from the land itself: 20 C. J., p. 798, §§ 245-247. There was evidence also tending to show that parts of this orchard are now left on each side of the road. For this division respondents claimed damages in the sum of $50. They also claimed that they had been damaged in the sum of $1,500 by reason of the division of the whole place into two parts. Proof of these two separate items of damage for the purpose of having them both considered and the amounts thereof added together was improper. The smaller item was included in the larger and neither of them should have been considered except to the extent that they tended to depreciate the market value of the remainder of the land. The question in the case for the jury was not to determine first the amount of the various items separately and then add all of said amounts together, but rather how much was the remainder of the land depreciated in its market value by reason of the road being established thereover. This amount, when so determined, plus the actual cash market value of the land taken is the amount which respondents are entitled to recover. It follows that the judgment appealed from must be reversed and the cause will be remanded for such further proceedings as are not inconsistent herewith.

BELT and BROWN, JJ., concur.

KELLY, J., not sitting.