Argued November 2, reversed and remanded September 10, 1971

# STATE HIGHWAY COMMISSION, *Petitioner, v.* HOOPER ET AL, *Respondents.*

488 P2d 421

*Leslie B. Hampton,* Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs were Lee Johnson, Attorney General, and G. E. Rohde and Glen V. Sorensen, Assistant Attorneys General, Salem.

*George W. Mead,* Portland, argued the cause for respondents. With him on the brief was James G. Heltzel, Salem.

Before DENECKE, Presiding Justice, and HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

HOWELL, J.

This is a condemnation case involving land owned by the defendants at the Woodburn interchange. The Court of Appeals affirmed the judgment awarded defendants in the trial court, and we granted the plaintiff's petition for review.

The plaintiff, Oregon State Highway Commission, condemned 2.4 acres of approximately 150 acres belonging to defendants for the purpose of constructing a diamond interchange for improved exit from

Interstate 5 from the south, as shown on the map below.

The defendants' land is bordered on the west by the northbound lanes of Interstate 5 highway, and on the north by the Hillsboro-Silverton highway, which runs east and west and which intersects Interstate 5 by an overhead crossing northwest of defendants' land. The taking of the 2.4 acres did not result in any basic change in the access to the roads and highways serving defendants' property, which had no access to the freeway (Interstate 5) before or after the taking, but did have access to the Hillsboro-Silverton highway both before and after the taking. The part taken is contiguous to a frontage road which connects with the Hillsboro-Silverton highway on the north. The improvement contemplated by the Highway Commission includes relocation of the frontage road to the southeasterly edge of the 2.4 acres, contiguous to the remaining land of the defendants, and defendants will have the same access to the relocated frontage road.

Fifty-two of the 150 acres owned by defendants, including the parcel taken, were zoned "interchange development" or "commercial." The balance of the land was zoned "residential and agricultural." All of the land is level and of similar general characteristics, and was previously farm land.

The plaintiff alleged that the amount of just compensation to be awarded defendants was the sum of $9,600. The defendants alleged that the fair cash market value of the property taken was $48,000. Defendants claimed no damages to the remainder property. A jury awarded defendants $24,000.

The primary issue in this case is whether the 2.4 acres taken should be valued as a separate parcel or whether it should be considered as a part of de-

fendants' entire tract. If just compensation is to be determined by considering the 2.4 acres taken as part of the entire tract, does such method violate the rule in *State Highway Com. v. Bailey et al*, 212 Or 261, 281, 319 P2d 906 (1957), that any benefits to the property that remains can be used only to offset damages to that property and cannot be used to reduce the fair market value of the land taken.

The trial court restricted the evidence to the value of the 2.4 acres considered as a separate parcel and not as a part of the whole of defendants' land; and refused to admit evidence as to the highest and best use and evidence of the value of the defendants' entire property and of the value of the defendants' remaining property. The trial court found from the evidence and plaintiff's offer of proof that benefits accrued to the remainder. The trial court ruled that evidence of benefits to the remainder would be improper under *State Highway Com. v. Bailey, supra,* because the defendants were claiming no damages to the remainder; consequently, only evidence of the fair cash market value of the 2.4 acres would be considered.

The trial court also refused to give instructions requested by plaintiff that the market value of the 2.4 acres should be determined by considering it as a part of the entire property and not as a separate parcel.

The Court of Appeals also found that the parcel taken should be valued as a separate parcel and not as a part of the whole of defendants' land.

1. The basic premise and the constitutional requirement in all condemnation cases is that the landowner is entitled to be awarded just compensation for the taking of his property. Oregon Constitution, Art. 1, § 18.

Just compensation is to be considered in terms of what the owner has lost and not what the condemnor has gained. *See Santiam Lumber Co. v. Conhaim,* 218 Or 220, 344 P2d 247 (1959); 3 Nichols, Eminent Domain 49-50, § 8.61 (3d ed 1965). Compensation should be just to the condemnor as well as to the condemnee. *See Searl v. School Dist., Lake County,* 133 US 553, 10 S Ct 374, 33 L Ed 740 (1890).

2, 3. The measure of damages to be awarded the landowner in the case of a partial taking of his land is the fair market value of the land taken plus any depreciation in the fair market value of the remaining land caused by the taking. *See Tunison v. Multnomah County,* 251 Or 602, 445 P2d 498 (1968); *State Highway Com. v. Burk et al,* 200 Or 211, 265 P2d 783 (1954); *Pape et al v. Linn County,* 135 Or 430, 296 P 65 (1931). The depreciation in market value to the remaining land is often called severance damages. *See State Highway Com. v. Vella,* 213 Or 386, 323 P2d 941 (1958).

In Oregon, special benefits to the remainder land may be used only to reduce the damages to the remainder land and cannot be used to reduce the fair market value of the land actually taken. *See State Highway Com. v. Bailey, supra* at 277. This is also the rule in most jurisdictions, but has been widely criticized for the reason that if the special benefits to the remaining land exceed the severance damages to the remainder, the landowner is receiving double compensation—the market value of the land taken and the increased value of the remaining land. *See Note, Benefits and Just Compensation in California,* 20 Hastings L J 764, 767 (1969).

On the other hand, the rule has support on the

theory that if benefits are allowed to be offset against the value of the land taken, the condemnee may be forced to accept unrequested benefits rather than money. *See generally* 3 Nichols, supra, at 93-98, § 8.6206 (1); Peacock, *The Offset of Benefits Against Losses in Eminent Domain Cases in Texas: A Critical Appraisal,* 44 Texas L Rev 1564, 1566 (1966).

As a result of the decision in *Bailey,* we have two categories relating to condemnation awards in partial taking cases: (1) compensation for the value of the land taken against which special benefits may not be offset, and (2) depreciation to the value of the remaining land against which any special benefits may be offset. If we follow the defendants' contention we could also have a third category of compensation for only the value of the land taken without consideration of special benefits or damages to the remainder because no damages are claimed by the landowner.

4. The defendants herein contend, and the Court of Appeals found, that the 2.4 acres taken must be valued as a separate and distinct economic unit, and evidence of the condition and value of the remainder is not material.

To support this position the defendants rely primarily on the decisions in *State v. Meyer,* 403 SW2d 366 (Texas 1966), *aff'g.* 391 SW2d 471 (Tex Civ App 1965); *Territory v. Adelmeyer et al,* 45 Hawaii 144, 363 P2d 979 (1961); and *People v. Silveira,* 236 Cal App 2d 604, 46 Cal Rptr 260 (1965).

In *Meyer* the state condemned a 15-acre tract from the front of defendant's 103-acre tract in order to widen an existing highway. The land taken was 2600 feet long and 240 feet in depth. The defendant's right of access to the new highway was not acquired

by the state. Texas, like Oregon, follows the "value of land taken plus damage to the remainder" rule, thereby restricting any benefits to the remainder to be offset only against damages to the remainder. Also, in *Meyer* the landowner did not claim damages to the remainder and claimed only the value of the parcel taken.

Because the state was not condemning the right of ingress and egress from the remaining property, the trial court required the state to refrain from revealing to the jury that the 15-acre strip was in fact a part of a larger tract. Furthermore, the trial court would not allow the state to show that defendant's right of access was not being condemned.

The state contended that the part taken should be considered as part of the entire tract, and that evidence of the right of access was material. The state also offered evidence of value of the part taken on the basis of an average value of various portions of the entire tract.

While the Texas Court of Civil Appeals agreed that the parcel taken should be valued as a separate parcel because it was large enough to exist as an independent economic unit, that feature was not mentioned in the decision of the Supreme Court of Texas, 403 SW2d 366 (1966). The Supreme Court held that the retained access was relevant to the value of the remaining land, but where "the landowner waives all claim to damages to the remainder, then damages because of denial of access, or benefits because of access being permitted, becomes immaterial to a determination of the fair market value of the land taken." 403 SW2d at 373.

Regarding the second issue of whether the part

taken should be considered as a separate tract or as a part of the whole, the state in *Meyer* contended that the highway frontage was merely being moved over to the remaining land, thereby increasing the value of the newly-abutting land; therefore, the state condemned only a composite strip of the whole tract.

The Texas Supreme Court rejected the state's argument for the reason that an increase in the value of the newly-abutting land would result in the enhanced value to the remainder being used to offset the value of the land taken, and affirmed the action of the trial court in restricting the evidence solely to the value of the tract taken without reference to its being part of a larger tract.[1]

In *Territory v. Adelmeyer, supra,* also cited by defendants, the state condemned several parcels of land fronting on a street in Honolulu for a highway widening project. The smallest parcel, 10,000 square feet in area, was of sufficient size for a house lot. The defendants did not claim any severance damages, and the state did not claim any special benefits to the

---

[1] The decisions in *State v. Meyer* by both the Texas Court of Appeals and the Supreme Court were criticized in a note in 44 Texas L Rev 1621. The writer points out that when the land remains the same after the taking, valuing the part taken as a separate parcel could result in a windfall to the landowner. On the other hand, if the part taken is a narrow strip it may have no value as a severed parcel and should be valued as part of the whole. The writer suggests a third alternative: "To assure the landowner the fair market value of his condemned land and at the same time to avoid unrealistic attempts to value the part condemned as a separate unit, the court should consider both the relationship of the part to the whole and any unique, inherent characteristics which might make the condemned part more valuable than the remainder. Moreover, when the cause of the greater value of the strip taken is the existence of an improvement which will remain and thus will add the same value to the remainder, this improvement should not be considered in determining the value of the part taken." 44 Texas L Rev 1626.

remainder. The state moved to strike the testimony of various expert witnesses for the landowner on the ground they used "improper methods" of valuation; the motions were denied, and the denial of the motions was assigned as error.

On appeal the state contended that the "before and after" method of appraisal should have been used by the appraisal witnesses. The state also contended on appeal, as the state does in the instant case, that the property taken should be valued in its relationship to the whole.

The Supreme Court of Hawaii held that the "before and after" method would necessarily include benefits or damages to the remainder and, as no benefits or damages had been claimed, "just compensation simply becomes the fair market value of the land taken." 363 P2d at 984. The court pointed out that there was evidence that the parcels taken were of such size and character as to be separate and distinct pieces of property and that valuing the part taken as a part of the whole runs the danger of the interjection of severance damages to the remainder. The court also stated that if the land taken is valued as a part of the whole tract, it does not mean that a pro rata determination based strictly on a percentage of the part taken to the whole tract should necessarily be used because of possible differences in the part taken and the balance of the property. However, the court concluded that either method of valuation—separate tract or part of the whole—is "a matter of opinion of the appraisers to be weighed by the jury. * * * [T]he use of either method of valuation by the expert witnesses was proper and their testimony admissible, * * *." 363 P2d at 986.

The decision in *Adelmeyer* can hardly be construed to support the defendants' contention that only evidence as to the value of the land taken as a separate parcel should be submitted to the jury. In fact, *Adelmeyer* contains language quite contrary to defendants' position:

> "In those jurisdictions where, in partial taking cases, the value of the parcel taken is determined apart from damages and benefits to the remaining land, the general rule is to determine this value by considering the part taken in its relationship to the entire tract of land before the taking. * * *" *Territory v. Adelmeyer, supra,* at 984.

Nor is defendants' reliance on *People v. Silveira, supra,* well-founded. That case involved the taking of a front portion of landowner's property for street-widening purposes. The facts did not involve simply the movement of frontage on the owner's property. Rather, the widening removed the owner's potentially unlimited access to four specified access routes. As a result, the highest and best use of the property was changed from commercial to residential. This change caused the landowner to lose a unique valuable quality of his property which was not in existence following the taking.[2] In the instant case there was no such unique loss of access.

The plaintiff in the instant case relies on the decision in *Deer Valley Industrial Park Dev. & L. Co. v. State,* 5 Ariz App 150, 424 P2d 192 (1967). The state condemned 11.7 acres of 160 acres lying on both sides of a highway which the state was widening.

---

[2] For a more thorough discussion of *People v. Silveira,* see Matteoni, *The Silveira Case and Reestablishment of the Higher Zone of Value on the Remainder,* 20 Hastings L J 537 (1969). *See also* Clarke, *Easement and Partial Taking Valuation Problems,* 20 Hastings L J 517 (1969).

Access to the new highway was not to be controlled, and the condemnee had the same frontage on the new highway as he had before the taking. There was no evidence that the parcels condemned were of any greater value than the remaining acreage except for any special frontage value by reason of its fronting on the highway.

The state argued that the value of the parcel taken should be determined by considering it as a fraction or part of the whole without any allowance for frontage value. The condemnee contended that the land taken should be valued as separate parcels with consideration given to their frontage on the highway.

The state's method of valuation was accepted by the jury which also awarded additional damages for severance damages to the remainder.

Arizona follows the same rule as Oregon—the state must pay for the value of the part taken regardless of benefit to the remainder, and damages are based on the value of the part taken plus the market value of the remaining land in its "after" condition subtracted from the market value of the land in its "before" condition.

The court decided that the parcel taken should be valued as a portion of the entire tract and not as a separate parcel.[9] The court also refused to consider

---

[9] The court adopted the following quotation from 4 Nichols, Eminent Domain 544-45, § 14.231:

"The land taken must be valued as a portion of the tract of which it is a part and not as if it stood alone. This principle is predicated upon the obvious fact that the value of part of a tract is dependent upon its relationship to the remainder of the tract. Ordinarily this relationship gives it a greater value than the value inherent in it as a separate tract. By the same

the portion taken as having additional value because of its frontage on the highway. The court stated:

"We believe it further necessary in cases of this kind to instruct the jury that access or frontage rights upon an abutting highway pertain to the entire parcel of land and that when a front portion of abutting property is taken, the access or frontage rights have been taken only to the extent that the actual frontage on the highway might be reduced in length, either by reason of the shape of the property concerned or by other reasons inherent in the particular improvement contemplated." 424 P2d at 197.

The court in *Deer Valley* specifically rejected the reasoning in *Meyer, Adelmeyer* and *Silveira* that if the parcel taken can be regarded as having a separate, distinct value as a separate tract, it should be valued as if separated from the remainder and given the benefit of the entire value resulting from the frontage rights. Such valuation would result in property owners being "paid in full for valuable frontage rights, and yet at the same time retain these frontage rights." 424 P2d at 199.

The Arizona court, however, was careful to point out that a distinction must be made in those cases where the front portion of the land has special value because of characteristics such as being more level or

reasoning the value of the remainder is likewise enhanced by consideration of its relationship to the whole tract. * * *"

and also the following stated from Jahr, Eminent Domain 139, § 103:

"The overwhelming weight of authority on the question of valuing the part taken in such a case is that the part acquired is not limited in value as though it were an isolated piece, but its value is determined on the basis of an integral part of a larger area in the same ownership."

less marshy, in which case the front portion should be valued higher than the rear portion.

In *Deer Valley,* the landowner had access to the highway before and after the taking. The condemnee generally had the same amount of frontage before and after the taking; only the depth of his property was reduced, and the remaining land had the same general characteristics as the part taken.

A similar situation exists in the instant case because access to the freeway did not exist before or after the taking, and the defendants have the same access to the Hillsboro-Silverton highway as they had before. Because of the construction of the exit ramp on the 2.4 acres taken, the frontage road which already existed will merely be moved back, and defendants' access to the frontage road and to the Hillsboro-Silverton highway will be unchanged. Consequently, the defendants' property enjoys the same advantage after the taking as it had enjoyed previously.

However, the defendants' expert witness testified that he made no attempt to value the entire property but that he gave consideration to frontage or access value to the part taken in reaching his valuation of $20,000 per acre for the 2.4 acres, although he knew that the frontage road was going to be restored.

The result of this situation was aptly expressed by Judge Palmore in his article, *Damages Recoverable in a Partial Taking,* 21 SW L J 740, 743 (1967), as follows:

"* * * in states that do not permit the offsetting of benefits to the remainder against the award for the portion taken, the result may be that the landowner gets paid for something he has not lost— that is, the frontage value."

Judge Palmore also submits the following conclusion:

> "To the extent that access remains undiminished the frontage is undisturbed. It is not taken, but merely relocated. The remainder parcel is damaged, of course, to the extent that its depth is reduced or for some other reason is less advantageously situated than before the portion was taken, but it is not 'benefited' by the frontage, because as a part of the original tract it enjoyed that same benefit before the taking." 21 SW L J 743.

We decline to construe *State v. Bailey* as restricting the evidence to only the value of the parcel taken in a case where the condemnee has the same frontage after the taking as before, because it would result in the condemnee being paid in full for valuable frontage rights and yet, at the same time, retaining the frontage rights. *Deer Valley v. State, supra.*

We conclude that consideraion should not be given in the instant case to frontage or access value to the part taken, because the frontage and access remain the same after the taking. For the same reason, the remaining property is not actually "benefited" by the taking because it has the same advantages after the taking as it had before.[4]

5. We also conclude that the part taken should not be valued as an individual parcel separate and apart from the remainder of defendants' land. Its relationship as a part of the whole should be considered, and if the evidence shows that the highest and best use of the remaining land is the same as the part taken, the parcel taken may be valued as a pro rata part of the whole. However, the use of a percentage

---

[4] *See generally,* Droege, *Frontland Taking—Backland Value,* 9 Natural Resources 237 (1969).

basis should be qualified to apply to only that part of the property which has the same highest and best use as the property taken. Otherwise, an inequitable award to the landowner could result if the part taken is inherently the most valuable part of the whole tract, since a value could be given to the part taken that is less than its real worth. Note, 44 Texas L Rev, *supra* at 1626, n 25. Any unique or inherent characteristics which might make the condemned part more valuable may also be considered. This, however, should not include frontage value attributed to the part taken where, as in the instant case, the frontage is restored to the remaining land.

For all these reasons, the cause must be reversed and remanded for a new trial.

BRYSON, J., dissenting.

The State Highway Commission, by its complaint, seeks to condemn 2.4 acres of a total of 150 acres owned by the defendants. The defendants, by their answer, did not allege damage to the remainder of their property. The reply was a general denial. Therefore, the only issue before the court and jury was the fair cash market value of the property the State Highway Commission sought to acquire, by its power of eminent domain, on the date it filed the complaint. *State ex rel v. Hawk et al,* 105 Or 319, 328, 208 P 709 (1922), *State Highway Com. v. Bailey et al,* 212 Or 261, 277, 319 P2d 906 (1957).

Fair cash market value is the amount of money in cash that land would bring in the open market if it were offered for sale by one willing but not obliged to sell and purchased by one willing but not obliged to buy. *Pape et al v. Linn County,* 135 Or 430, 438, 296

P 65 (1931). The cases cited in the majority opinion concerning "any depreciation in the fair market value of the remaining land caused by the taking" have no application to this case.

The majority opinion establishes a rule that forces the private landowner to accept a trade for his land if the benefit to the remainder of the land is equal to the value of the land taken by the state. *In this case it is not at issue by the pleadings.* This is a dangerous invasion of the individual's right of ownership of property and one more invasion of his right of privacy.

The state argues that the "before and after" rule should be applied in this case. Each condemnation taking presents different complex situations, some impossible of determination. In *Bailey, supra* at 277, we stated:

> "* * * [T]he question first arises as to the legal effect to be given to special benefits in the trial of a condemnation action. It is now firmly established by our decisions that such benefits may be set off or employed to reduce the damages to the remainder of the tract not taken, but cannot be used to adversely affect the right of the owner to receive the fair cash market value of the land actually taken. The defendants were entitled to receive the fair cash market value of the land actually taken for highway use * * *."

Oregon has followed the majority rule best explained in 4 Nichols, Eminent Domain (Rev 3d Ed), § 14.232 (1) at 555 as follows:

> "The only difficulty experienced in the practical application of the before and after rule has been with relation to the question of set-off of benefits. Obviously, determination of the value of the re-

mainder area is based to some extent upon the benefits conferred upon it as a result of the use of the land taken for the project for which the condemnation was brought. The benefits may be of such magnitude that the consequential damages to the remainder area are completely cancelled out and an additional sum deducted from the market value of the land actually taken. In other words, the resulting award would be less than the value of the land taken standing alone. *In those jurisdictions where set-off of benefits is allowed as against the value of the land taken there is no problem. However in the great majority of jurisdictions, such set-off is not permissible * * *.*" (Emphasis added.)

We must also keep in mind that the Oregon Legislature has given the right of eminent domain to private corporations. *See* ORS ch 772.

In the present case, the 2.4 acres sought to be taken were separated from the remainder of defendants' land by the existing access road, thus giving defendants access to their two separate parcels of land. The 2.4 acres was a separate economic unit and should be treated as such.

I would affirm the decision of the Court of Appeals, 2 Or App 450, 468 P2d 540 (1970), which in turn affirmed the trial court.