Argued October 24, reversed and remanded December 15, 1972

## STATE HIGHWAY COMMISSION, *Respondent,* v. FREEMAN (No. 6175), *Appellant.*

504 P2d 133

*Frederic H. Starkweather, Jr.,* Gold Beach, argued the cause for appellant. With him on the brief were Starkweather and Higashi, Gold Beach.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

THORNTON, J.

Plaintiff State Highway Commission brought a condemnation proceeding to acquire in fee simple a

200-foot right of way through defendant's real property for the purpose of relocating Highway 101. Defendant's property is located in southern Curry County near the unincorporated coastal community of Harbor.

After jury trial defendant obtained a verdict and judgment for $32,500, plus interest. She appeals from that judgment contending that the trial judge erred:

(1) In admitting certain testimony offered by plaintiff's witnesses, and refusing other testimony offered by defendant's witnesses, as to the true value of the land taken and damage to the remainder;

(2) In refusing to allow defendant to introduce into evidence to show fair market value plaintiff's pretrial offers of settlement; and

(3) In refusing to admit testimony of a defense witness as to (a) a comparable sale in the vicinity and (b) the amount of defendant's land which would be taken up in order to construct three access ramps to the new highway, and an exhibit showing the same.

Prior to the taking defendant owned a 78-acre tract which was bounded on the east side by old Highway 101 and on the west side by the Pacific Ocean. A road, Ocean View Drive, crosses defendant's land in proximity to the ocean. The taking did not affect the segment of land between Ocean View Drive and the ocean, and this portion does not enter into the questions of valuation here presented.

As shown on the drawing reproduced overleaf, the new highway lies only a very short distance to the west of the old highway. Thus, a small half-moon-shaped strip of defendant's land remains between the new and old highways. Defendant continues to have access to the old highway from the half-moon strip,

PLATE B

SEC. 15, T.41S., R13W., W.M.
CURRY COUNTY, ORE.

Scale 1 in. = 200 ft.

- 3 -

but not to the new highway therefrom. The state condemned a total of 5.7 acres. The new highway is above the level of defendant's property, and, as previously noted, is about 200 feet wide and 1,250 feet long. The state granted the right of access to the defendant at three specified points along the west side of the frontage of the new highway, all below grade. De-

fendant's property previously had some 1,200 feet of unlimited access on the old highway.

Summarizing, after the taking the defendant's land will consist of (a) a half-moon-shaped three-acre tract located between the old and the relocated highway, and (b) the main tract stretching west from the new highway to Ocean View Drive and the ocean.

The second amended complaint, upon which trial was had, alleged the true value of the land taken and damage to be $28,350. The defendant claimed $75,000 to be the value of the taking.

The first issue raised by defendant involves the applicability of the decision of our Supreme Court in *State Highway Comm. v. Hooper,* 259 Or 555, 488 P2d 421 (1971), to the facts of this case. Defendant contends that *Hooper* does not apply here, and that the state's appraisers,[1] in determining their estimate of the compensation award, incorrectly set off special benefits against the value of the property taken, rather than just against severance damages to the remaining land.

■ Defendant is incorrect. *Hooper* does apply in this case, and our review of the evidence shows that, in fact, the state complied with the valuation method set out in the *Hooper* decision. The law in Oregon, both before and after *Hooper,* is that special benefits incident to a condemnation may only be used to reduce

---

[1] At trial, the defendant's attorney only objected to the testimony of one of the three appraisers. On appeal, he attacks all three, claiming that he was too "confused" at trial to raise timely objection to the other two. Confusion of counsel is hardly a recognized basis for resurrecting error for appellate consideration in a civil case; however, given our decision on this point, we will treat the record as though all three appraisers had been challenged at trial.

those damages to the property owner's remaining land which also result from the taking. These benefits may not be used to reduce the valuation of the property actually taken by the condemnor. *State Highway Com. v. Bailey et al*, 212 Or 261, 319 P2d 906 (1957); *State Highway Comm. v. Hooper,* supra.

■ The *Hooper* decision holds that when the land taken fronts on a highway, and when the taking is to widen or relocate that highway, leaving the condemnee with equivalent frontage both before and after the taking, that then "* * * consideration should not be given * * * to frontage or access value to the part taken * * *." 259 Or at 569. This is not offsetting a special benefit against the value of the property taken, but only realizing that there is testimony that the frontage is substantially unchanged, and thus not a factor in determining the value of the land taken.

■ The rationale of the *Hooper* decision is applicable in this case. Before the taking, the defendant had frontage and access on the old highway. After the taking, the defendant has frontage and access along the relocated highway. Recognizing this, and complying with *Hooper,* the state's three appraisal witnesses did not include frontage value as a part of the valuation of the 5.7-acre strip of land taken.[2] This valuation procedure was proper in accordance with *Hooper.*

The defendant contends that *Hooper* only applies if both frontage and *access* are the same before

_____

[2] Actually, two of the state's appraisers, including the one objected to at trial, first added in frontage value for the 5.7 acres taken, and then subtracted an equal value for frontage along the relocated highway. However, this only has the effect of eliminating that value from the final computed figure as *Hooper* dictates. State Highway Comm. v. Hooper, 259 Or 555, 569, 488 P2d 421 (1971).

and after the taking, and asserts that here access was significantly reduced by the condemnation.

We read *Hooper* as presuming an equivalency of access, as well as frontage; and here the defendant, who had unlimited access to the old highway, now has only three points of right of access to the relocated highway. Nevertheless, the state's appraisers all testified that they considered the before and after access equal in value, i.e., that the unlimited access to old Highway 101 was equivalent to the accesses allowed to the new highway.

■ As to the second issue, namely, did the trial judge err in refusing to allow defendant to introduce into evidence to show fair market value plaintiff's pretrial offers of settlement, defendant makes two arguments: First, plaintiff's Exhibits Nos. 1 and 3, which are letter offers by the state to the defendant, should have been submitted to the jury as admissions on the part of the state as to fair cash market value of the property taken.

This position is refuted by *Highway Com. v. Assembly of God et al*, 230 Or 167, 368 P2d 937 (1962).

■ The defendant then asserts that $48,800 (the amount offered in both letters) is not the "tender" contemplated by ORS 366.380 (9) (repealed Oregon Laws 1971, ch 741, § 38, now replaced by ORS 35.345).

Defendant asserts that the commission does not have to negotiate with an owner prior to commencing the action, and that if it does, the negotiations may result in either an official "tender" or an informal "offer." Defendant claims that here only an "offer" was made, and that therefore it cannot be used to establish costs and disbursements.

Defendant is in error. The commission is mandated to negotiate. ORS 366.370 (1), (3) (repealed Oregon Laws 1971, ch 741, § 38, now replaced by ORS 35.235). *State Highway Com. v. Efem Whse. Co.,* 207 Or 237, 295 P2d 1101, 70 ALR2d 797 (1956). "Offer" and "tender" are the same for the purposes of ORS 366.380 (9). *State Highway Com. v. Efem Whse. Co.,* supra.

Defendant's second argument is that the offer, or tender, came too late to satisfy ORS 366.380 (9) ("* * * but if it appears that the commission tendered the defendant *before commencing the action* * * *." [Emphasis supplied.]). Defendant argues that the offer came on the day of trial, and that this was too late, citing *Oregon Cent. R. Co. v. Wait,* 3 Or 428 (1869).

The state's offer of $48,800 was indeed orally reaffirmed to the defendant on the day of trial. However, that monetary offer had been before the defendant for almost nine months before trial, at least since the date of Exhibit No. 1, March 19, 1971. Exhibit No. 1 preceded the filing of the amended complaint, and Exhibit No. 3, which also offered $48,800, preceded the filing of the second amended complaint, and the day of trial, by about a week. In fact, the second amended complaint was prompted by defendant's request for additional access, and defendant knew, through Exhibit No. 3, a letter of December 8, 1971, both that the complaint would be amended to add access, and that, even with this amendment, the state still offered $48,800.

This situation is thus clearly distinguishable from that in the *Wait* case; here the defendant had ample time to consider the state's offer which never varied

after March 1971, with trial not until December 14, 1971.

The trial judge did not err in using this tender as a basis for denying attorney fees. ORS 366.380 (9).

Lastly, we must consider whether or not the trial judge erred in refusing to admit testimony of defense witnesses as to: (a) a comparable sale in the vicinity and (b) the amount of defendant's land which would be taken up in order to construct access ramps to the new highway, and an exhibit showing the same.

As to point (a) above, the record shows that defendant's witness Dawell was subsequently allowed to testify as to this sale.

Next, defendant contends that she should have been allowed to cross-examine Mr. Ikola, the state's resident engineer on the highway project, as to possible access difficulties, perhaps requiring fill on the defendant's land, if the highway were extended to a four-lane width.

The defendant also contests the exclusion of her Exhibit No. 9. The exhibit consists of cross-sections, drawn at right angles to the highway center line, designed to indicate the fill on the defendant's land required to construct accesses of no more than 10 per cent slope. The defendant's witness, a registered surveyor, testified that 10 per cent slope, in his opinion, was the maximum grade for a fully usable access.

Thus, both of the assignments concern excluded evidence by which the defendant sought to show potential damage to her remaining property resultant on the taking by the state. The defendant intended to stress her view that the rights of access granted were inadequate, and to demonstrate how much of her re-

maining land might have to be sacrificed for fill to provide "usable" access.

The trial court excluded all of this evidence, terming it speculative.

■ ■ Evidence of prospective benefit or damage to land is admissible in a condemnation proceeding if it concerns "* * * matters not merely speculative which would be considered by a prospective vendor or purchaser * * *." *State Highway Com. v. Bailey et al,* supra, 212 Or at 304. Evidence is more than "merely speculative" if the damage or benefit it anticipates is a "reasonable probability" in the "near future." *Highway Commission v. Oswalt,* 1 Or App 449, 453, 463 P2d 602 (1970).

■ Here, the evidence which the defendant sought to allow, and which the trial court excluded, seems more than "merely speculative."

By her Exhibit No. 9, the defendant did not intend to show who would construct the accesses from her property to the new highway, nor to demonstrate exactly how such accesses would be constructed. Rather, she sought, through expert opinion, to indicate her view of the maximum proper slope of an access, and the amount of fill on defendant's land which would be requisite to construct an access of that slope. This is not what the state characterized as evidence of a speculative construction project,[9] but evidence of

---

[9] It should be noted that evidence as to a proposed access would not necessarily be speculative merely because the access was not yet constructed, as the state seemed to imply at trial.

"* * * [T]he cost of restoring the remaining land to a condition that will make it available for use, if restoration is a reasonable and proper method of meeting the damage caused by the taking, is an element that may be considered in

damage which, if the defendant is believed, must result whether such a "proper" access is, or is not, built. For if the access is so constructed, then the defendant's land would have to be used for fill, and, if it is not, then the jury might find that defendant will have what her expert termed "inadequate" access, and that she is thereby damaged.

The exclusion of this evidence prejudiced the defendant since it limited her ability to demonstrate severance damage, and since the evidence, if admitted, would have tended to corroborate the valuation of her appraisal witness, who testified as to the inadequacy of access in contravention of the opinion of the state's three appraisal witnesses.

The evidence, as to fill and access if the highway were expanded to four lanes in width, also seems more than "merely speculative," although this is a closer question. The state has acquired a right of way sufficient to accommodate four lanes, and the highway through part of the defendant's property is now four lanes wide.

In this situation, the potential expansion to a four-lane highway seems a "reasonable probability" which would be "considered by a prospective vendor or purchaser * * *." *State Highway Com. v. Bailey et al*, supra.[4] As such, the evidence should have been submitted to the jury.

---

determining the compensation * * *." 27 Am Jur 2d 133, Eminent Domain § 314 (1966).

Such restoration may include, for example, the need for fencing. Tillamook County v. Johnson, 96 Or 623, 190 P 159 (1920); or for access construction, State v. Bruening, 326 SW2d 305 (Mo 1959), Long v. Shirley, 177 Va 401, 14 SE2d 375 (1941).

[4] "* * * Damages are assessed once and for all, and the

Reversed and remanded for further proceedings in accordance with this opinion.

---

future necessities as well as the present needs of the condemnor are to be taken into consideration * * *. In other words, it is not what the condemnor actually does or plans to do that determines the quantum of damage, but rather what it acquires the right to do." 4A Nichols, Eminent Domain 14-163, 164-165, § 14.241 (3) (3d ed 1971).