Argued and submitted September 30, 1998, reversed and remanded
September 15, 1999

STATE OF OREGON,
by and through its
DEPARTMENT OF TRANSPORTATION,
*Appellant,*

*v.*

Kenneth R. HUGHES,
Betty L. Hughes, Kenneth R. Hughes,
dba Columbia River Honda/Suzuki/Polaris,
*Respondents.*

(96-2003, 96-2004; CA A99486 (Control), A99487)
(Cases Consolidated)

986 P2d 700

Janet A. Metcalf, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

John F. Hunnicutt argued the cause and filed the brief for respondents.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Landau, Judge.

DEITS, C. J.

**DEITS, C. J.**

Plaintiff, State of Oregon, seeks reversal and remand in a condemnation case in which the jury returned a verdict awarding defendants just compensation in the amount of $53,500. The trial court subsequently awarded costs and attorney fees to defendants in the amount of $23,550.53. That amount was later reduced to $17,723.75 on defendants' own motion. Plaintiff's only assignment of error concerns the trial court's grant of defendants' motion *in limine* excluding evidence of contaminants found on the condemned land after plaintiff had filed the condemnation action. We reverse and remand for a new trial.

The facts are not in dispute. Defendants own land along the Columbia River Highway between Warren and Columbia City in Columbia County.[1] They operate a business selling and servicing motorcycles, personal watercraft and other equipment on the property. Plaintiff condemned part of defendants' land and acquired easements over it to allow the Oregon Department of Transportation (ODOT) to widen the highway adjacent to defendants' business.

Work began on the highway project after the condemnation action was filed on January 5, 1996, but before trial began on August 12, 1997. As part of the project, soil was excavated from the portion of defendants' property that is involved in this action. During the excavation, it was discovered that the property was contaminated with hazardous materials. Neither party was aware of the contamination at the time that the condemnation action was filed.

Before trial, defendants filed a motion *in limine* requesting the court to:

"(A) limit the evidence Plaintiff can offer concerning devaluation of the property Plaintiff has taken by reason of

---

[1] Plaintiff actually filed two condemnation actions, because the property that it sought to condemn was on two separate pieces of land. The larger piece is owned jointly by defendants Kenneth and Betty Hughes, and the smaller piece is owned solely by defendant Kenneth Hughes. The two condemnation actions were consolidated for trial and, by agreement of the parties, the jury returned a single verdict representing just compensation for both pieces of land. Accordingly, the two actions are consolidated on appeal.

the presence of contaminants; and (B) refuse to allow the Plaintiff to offer any evidence concerning the existence of hydrocarbons beneath the surface of the land taken by them."

The trial court granted defendants' motion *in limine*. The trial court explained its ruling as follows:

"The court's ruling was based upon what you designated as reason one, that being that the court's belief that testimony as to contamination that was found after the date of the filing of the complaint and the cost of clean up associated with that *were not relevant* and the reason the court would find that they're not relevant is that the appropriate value for property taken in a condemnation is the value that a willing buyer and a willing seller would agree to as to the price on the date that the complaint was filed.

"I'm ruling that only the information *that was available to the parties at that time* should be considered. My understanding is that there is no testimony that could be offered in this proceeding that [plaintiff] had performed any on-site evaluations for contamination prior to the signing * * * or the filing of the complaint and that was in spite of the fact that it was obvious that the operation in this case involved repair of motorcycles, lawn mowers and other small engines.

"It's my concern that if I were to allow evidence in as to the contamination and the clean up then that would give [plaintiff] an unreasonable benefit of having complete knowledge of all conditions that existed on the property and that, I believe, is not in keeping with the standard that we have to apply, that we're looking at what a willing buyer and a willing seller would have paid on a given date.

"So I believe it would require the court to allow in evidence that was not available and would assume perfect knowledge on behalf of [plaintiff] which is different, I believe, than the standard that is required in condemnation cases which would be, as I've previously stated, the price that a willing buyer and willing seller would have come to given the knowledge that they have on a specific date." (Emphasis added.)

Before plaintiff rested its case-in-chief, the trial court was asked to reconsider its ruling on defendants'

motion *in limine* in the light of a written offer of proof submitted by plaintiff. The court refused to reconsider, explaining:

> "I would just indicate that in addition to the reasons previously stated by the court I would be denying your request to provide information and testimony as to the contamination on the property or the cost of cleaning that up, that the contamination was a latent defect on the property, it was not discovered as part of the appraisal process but was discovered during the course of the construction of the highway, and it's my belief that for those reasons that it's different than the precedent that was provided to the court from other jurisdictions by [plaintiff] in this matter. So I'm still sustaining and granting [defendants'] Motion in Limine."

In accordance with the court's rulings, no evidence of contamination or the effect of contamination on the value of the property was introduced at trial.

■■■  Plaintiff assigns error to the trial court's exclusion of the evidence of contamination, arguing that the evidence was relevant to the determination of the fair market value of the land being taken and that the fact that the contamination was discovered between the time that the condemnation action was filed and the time of trial does not compel its exclusion as a matter of law. The state described the evidence that it sought to offer in an oral offer of proof:

> "[T]he state has evidence that will show that during the construction, as soon as the construction of this highway project reached this property, the contamination was discovered, petroleum contamination.
>
> "Of particular concern is benzene in the ground water. There are other contaminants but that particular contaminant is a known carcinogen. It's found in levels something in the order of 300 times the allowable amount, maybe even more.
>
> "It was found at these levels in the area the state is acquiring and I just received some lab results that I subpoenaed from the defendants' lab tests which indicates it's found again on the part that remains and it's near the southeastern corner of the building in the part that remains.

"Of course, all of this was found after the date of the filing of this action but it's the state's contention and the state has witnesses and will present witnesses—the state would, if allowed, present witnesses to the effect that because of the nature of this property and the things that can be seen by a potential purchaser of this property, this property is a highway business, it's an automotive related business, a motorcycle shop involving motorcycle sales and repair, that any reasonable purchaser, any well-informed purchaser, would inquire as to the history of this property, would test, would do something on the order of a level one investigation that would discover that this property had previously been a grocery store with gasoline pumps, that that use existed from about 1945 into the 1960s.

"That testing would result as a matter of course from this and the testing would, of course, disclose the contamination."

Under Article I, section 18, of the Oregon Constitution, property owners are entitled to just compensation for the taking of their property. In the case of a partial taking of property, just compensation is the fair market value of the property taken plus the depreciation in fair market value, caused by the taking, of the portion not taken. *State Highway Comm. v. Hooper,* 259 Or 555, 560, 488 P2d 421 (1971). "Fair market value is defined as the amount of money the property would bring if it were offered for sale by one who desired, but was not obliged, to sell and was purchased by one who was willing, but not obliged, to buy." *Dept. of Trans. v. Lundberg,* 312 Or 568, 574, 825 P2d 641, *cert den* 506 US 975 (1992). Fair market value is determined by giving consideration to all factors "that might fairly be brought forward and reasonably be given substantial weight in negotiations between the owner and a prospective purchaser." *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 412, 281 P2d 707 (1955). Fair market value is to be measured "as of the date the condemnation is commenced or the date the condemner enters on and appropriates the property, whichever first occurs." *Lundberg,* 312 Or at 574 n 6. Here, the pertinent date is the date on which this action was brought, January 5, 1996.

We conclude that the evidence related to the contamination that existed on the property on the date that the condemnation action was filed, and evidence regarding whether

the contamination could have been discovered by a prospective buyer or seller at that time, is relevant to determining the market value of the property on the date that the condemnation action was commenced. Under OEC 401, relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This standard is a very low threshold for evidence to be considered relevant. *Lundberg,* 312 Or at 575. Evidence relating to contamination on the property and the possibility of its discovery on the date that the action was commenced would bear directly on the fair market value at that time and easily passes the threshold for relevance.

■　The more difficult question presented here is whether, although relevant, the evidence must be excluded, as a matter of law, because, in fact, it was not known to these particular parties at the time that the condemnation action was filed. Under our condemnation procedures, a final determination of just compensation necessarily occurs after the land's valuation date. As a consequence, it is possible that, as here, evidence will come to light during that period of time that could have been discovered on or before the valuation date and that reasonably could have affected the price a willing buyer and seller would have agreed to on the date of valuation. That evidence, of course, could result in a higher or lower value for the property.

■　Defendants offer a number of reasons why such evidence should not be considered. They argue that allowing the introduction of evidence relating to the value of property as of the date of the filing of a condemnation action, that was discovered after the date of filing, is inequitable to property owners. We disagree. First, as a matter of law, the valuation of the property on the date that the action is filed is not based on the expectations or information known to the parties in this case. Rather, valuation is determined based on what a hypothetical but willing purchaser would pay for the property. *Lundberg,* 312 Or at 574. As stated by the court in *Lundberg:*

"In determining the fair * * * market value of the land condemned, 'all considerations that might fairly be brought forward and reasonably be given substantial weight in negotiations between the owner and a prospective purchaser' should be taken into account." 312 Or at 575 (quoting *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or at 412).

Consequently, the fact that the specific parties here did not have information regarding contamination that existed on the property at the time of the filing of the condemnation action should not, as a matter of law, preclude the introduction of evidence about the contamination that could fairly have been brought forward at that time by a potential buyer of the property.

■■ Further, although it would be inequitable to allow evidence of a change in the condition of the property that occurred after the filing of the condemnation action or to allow evidence of changes in value resulting from the filing of the condemnation action, we find nothing inequitable about allowing evidence about the condition of the property *on the date of valuation* that happened to be discovered between that time and trial, if the information could have been brought forward and considered on the date of valuation. "Just compensation is full remuneration for loss or damage sustained by an owner of condemned property." *Lundberg,* 312 Or at 574. As discussed above, the just compensation required by the constitution to be made to a property owner is to be measured by the loss caused to the owner by the appropriation. A property owner is entitled to receive the value of what he or she has been deprived of, and no more. To award less would be unjust to the owner; to award more would be unjust to the public. *Bauman v. Ross,* 167 US 548, 574, 17 S Ct 966, 42 L Ed 270 (1897), *quoted in Pape et al. v. Linn County,* 135 Or 430, 436, 296 P 65 (1931). Allowing the introduction of the disputed evidence here is consistent with the objective of compensating a landowner for the value that they have been deprived of. As noted above, in many instances, evidence that is discovered after the filing of a condemnation action, but before trial, and that could have fairly been brought forward on the date of valuation, may be beneficial to the landowner. To ignore such information does not promote

the purpose of just compensation, which is to compensate the landowner fully and fairly for the loss of the land.

■■■ We see no reason to adopt the inflexible rule that defendants advocate, limiting evidence of the market value of a condemned property to only information known by the specific parties to the condemnation action on the date that the action is filed. Evidence discovered after the filing of a condemnation action, and that could fairly be brought forward and given substantial weight in negotiations between an owner and a prospective buyer that pertains to the market value of the land on the date of valuation, should not be excluded, as a matter of law, so long as the evidence is discovered before a valuation is agreed upon by the parties or the value has been fixed by the court. Accordingly, we conclude that the trial court erred in excluding the disputed evidence.[2]

Reversed and remanded.

---

[2] Defendants argue that plaintiffs should have amended their offer before trial under ORS 35.346(2) (1997), which reads, in part:

> "The amount of just compensation offered shall not be reduced by amendment or otherwise before or during trial except on order of the court entered not less than 60 days prior to trial. An order for reduction of just compensation offered, pleaded by the condemner in the complaint or deposited with the court for the use and benefit of the owner pending outcome of the condemnation action, may be entered only upon motion of the condemner and a finding by clear and convincing evidence that the appraisal upon which the original offer is based was the result of a mistake of material fact that was not known and could not reasonably have been known at the time of the original appraisal or was based on a mistake of law."

This provision, however, was adopted by the 1997 Legislature and became effective October 4, 1997. The trial in this case was held on August 12-14, 1997, and final judgment was entered on September 8, 1997. Consequently, this provision was not applicable here.