Argued and submitted August 28, 2007, affirmed May 21, 2008

STATE OF OREGON,
by and through its Department of Transportation,
*Plaintiff-Appellant,*

*v.*

PILOTHOUSE 60, LLC,
an Oregon limited liability company,
Robert A. Jensen and Shirley Jensen,
husband and wife,
*Defendants-Respondents,*

*and*

Anne Sarah DAVIS,
trustee of the Anne Sarah Davis Trust
dated July 21, 1995,
Bi-Mor Stations Inc.,
David A. Budreau,
dba Dave's BP,
Keningston Management, Inc.,
People's Bank of Commerce
and Kimberly McElroy,
dba Macs Rock & Rod Diner,
*Defendants.*

Jackson County Circuit Court
054401E3; A132529

185 P3d 487

Denise G. Fjordbeck, Senior Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

John M. Junkin argued the cause for respondents. With him on the brief were Lisa E. Lear, Bullivant Houser Bailey PC, Stephen R. Frank, and Williams, Kastner & Gibbs PLLC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

In 2004, the Oregon Transportation Commission determined that it needed to widen a section of Barnett Road in Medford by about 20 feet as part of a larger highway construction project. To effect the widening, plaintiff, the Oregon Department of Transportation, needed to acquire a strip of land running across several parcels adjacent to Barnett Road. The issues in this case revolve around two of those parcels. One parcel is owned by defendant Pilothouse 60, LLC; the other is owned by defendants Robert and Shirley Jensen, who are also the sole owners of Pilothouse 60. Before commencing this action for condemnation of the strip of land, plaintiff made a written offer to defendants to purchase the affected portion of both parcels for the lump sum of $180,750, based on an appraisal that treated the two parcels as a single, larger parcel. On defendants' motion for summary judgment, the trial court ruled that the two parcels could not be treated as one and, consequently, that plaintiff was required to make separate offers to purchase the affected portion of each parcel. The court dismissed the action without prejudice, and plaintiff appealed. We agree with the trial court: Defendants' respective properties may not be treated as a single parcel. Furthermore, we conclude that the trial court correctly dismissed the action. Accordingly, we affirm.

The pertinent facts are not in dispute. In 1998, defendant Robert Jensen purchased both parcels at issue here. He later transferred them to Pilothouse 60. The parcels lie on the south side of Barnett Road, which runs east-west, so that the northern boundary of both parcels abuts the road. The smaller of the two parcels, tax lot 3300, which lies to the west of the other, is the site of a vacant restaurant. Aside from the building, the bulk of it consists of paved parking. The northern part of the other parcel, tax lot 3200, lies to the east of the restaurant parcel. It is the site of a motel.

The restaurant parcel has two "curb cut" driveways that allow access to Barnett Road. The motel parcel has one such driveway. The driveway into the motel parcel leads directly to a covered, drive-through check-in area near the lobby, which is at the north end of the motel. Motel parking begins on the other side of the check-in area. There is no

physical demarcation between the motel's parking lot and the restaurant's parking lot; visually, the two businesses appear to share a single, large parking area. Thus, the motel can be accessed through the restaurant's driveway, and vice versa.

Barnett Road

Restaurant

Motel

Not drawn to scale • Dotted lines represent property boundaries

For reasons that are not pertinent here, the highway construction project requires that direct access to the motel parcel from Barnett Road be closed—in other words, there will no longer be a driveway onto that parcel, and the covered check-in area will not be accessible from the north.[1]

In 2004, the Transportation Commission passed a condemnation resolution for the strip of land running along Barnett Road. At the time, Pilothouse 60 owned both parcels. In September 2004, plaintiff made a single offer of $164,000 to Pilothouse 60 for the strip of land running along the northern boundary of the two parcels. The appraisal underlying plaintiff's offer indicated that the two parcels are "very integrated," that using the parcels as a motel and restaurant, respectively, is their highest and best use, and that they would therefore be treated as a single parcel for valuation

---

[1] One of the driveways onto the restaurant parcel will also be closed. That closure does not raise any issues in this case.

purposes. It further indicated that, because the motel can be accessed from Barnett Road via the restaurant's driveway, the motel parcel would suffer no loss in value as a result of the closure of its separate driveway.

Pilothouse 60 did not accept plaintiff's offer, asserting that plaintiff had to pay damages for the closure of the motel's driveway. Nine days after plaintiff made the offer, the Jensens caused Pilothouse 60 to transfer the motel parcel to them as individuals, without consideration, to "clarify" that the two parcels are separate properties and should not be treated as a single parcel for appraisal purposes.

Plaintiff did not file a condemnation action after Pilothouse 60 declined the offer. On February 7, 2005, it again made a lump sum offer of $164,000 for the entire strip, but this time addressed the offer to both Pilothouse 60 and the Jensens. Again, they did not accept the offer. Plaintiff still did not file a condemnation action.

Later in 2005, plaintiff determined that, in addition to the strip of land, it needed to acquire an easement over a small area of the motel parcel. In August 2005, it ordered a new appraisal. Based on the added easement and an increase in property value, plaintiff offered defendants $180,750, again as a lump sum. In letters to defendants' attorney accompanying the offer, plaintiff stated, "Please discard the previous documents dated and sent to you on February 7th, 2005." Defendants did not accept the offer. In December 2005, plaintiff initiated this action.

In their answer to plaintiff's complaint, the Jensens asserted that plaintiff "failed and refused to negotiate" with them for the acquisition of the affected portion of the motel parcel. The Jensens also alleged as an affirmative defense that plaintiff did not make a written offer to them for the acquisition of that property and damages to the remaining portion. Pilothouse 60 filed a separate answer asserting that plaintiff failed to negotiate for the acquisition of the affected portion of its property and alleging the same affirmative defense that the Jensens alleged. Defendants then filed a joint motion for summary judgment seeking dismissal of the action on the same ground asserted as the affirmative defense. Specifically, they argued that, under ORS 35.346(1),

for each parcel, plaintiff was required to make an offer to purchase the needed portion and to pay for damages to the remaining portion.

The trial court concluded that, because the two parcels were held by different owners when the condemnation complaint was filed, there was no unity of ownership, so plaintiff was required to make separate offers to the respective owners. Relying on *Urban Renewal Agency of Salem v. Caughell*, 35 Or App 145, 581 P2d 98 (1978), the court ruled that failure to make separate written offers is grounds for dismissal. Accordingly, it granted the motion for summary judgment and dismissed the action without prejudice. In a supplemental judgment, it also awarded defendants attorney fees and costs and disbursements pursuant to ORS 35.335.[2] This appeal followed.

Before we discuss the specifics of the parties' arguments, we pause to give a brief overview of one of the legal principles on which the trial court's ruling, the parties' arguments, and our analysis centers—namely, the "unity" principle. That principle derives from the law governing severance damages, which are generally available when a condemner takes only part of a piece of property. *State Highway Comm. v. Hooper*, 259 Or 555, 560, 488 P2d 421 (1971). Generally, severance damages are limited to depreciation in the value of the parcel that was severed by the condemnation. *Id.* That is, depreciation that the condemnation causes to the value of other parcels of property is not generally compensable. However, in *City of Salem v. H.S.B.*, 302 Or 648, 653, 733 P2d 890 (1987), the Supreme Court held that, "when it can be shown that two physically separated tracts of land are so joined as to constitute a single parcel, each tract and any injury thereto may be taken into consideration for purposes of assessing

---

[2] ORS 35.335 provides, in pertinent part:

"(1) If an action is abandoned by the condemner, the court shall enter judgment in favor of the defendant for costs and disbursements in the action and for reasonable attorney fees and reasonable expenses as determined by the court.

"* * * * *

"(3) An action is considered abandoned if, at any time after filing a complaint, the case is dismissed or terminated or the condemner files an election not to take the property."

severance damages." Although there is no uniform rule for determining whether separate tracts of land are so joined, two important factors are unity of use and unity of ownership. "In the absence of either element, joinder does not exist and severance damages for the tract of land not directly injured by the taking are inappropriate." *Id.*

As we explain in more detail below, the parties disagree as to whether the unity principle governs whether separate parcels of property can be treated as one under the circumstances of this case. Defendants argue that it applies here but that it is not satisfied. Plaintiff argues that it does not apply and, even if it does, that control by the same individuals is sufficient to establish unity of ownership.[3]

We turn to the specifics of the parties' arguments. Plaintiff first assigns error to the trial court's grant of summary judgment, arguing that the property at issue should be treated as a single parcel and, thus, that its joint offer was proper. It argues further that, in all events, dismissal of the condemnation action was not the appropriate remedy. In its second assignment of error, plaintiff challenges the trial court's award of attorney fees, arguing that, because the court erred in dismissing the action, the award was unwarranted.

In support of its contention that the property should be treated as a single parcel, plaintiff makes two alternative primary arguments. First, it argues that the unity principle does not apply here. Plaintiff asserts that the issue in *H.S.B.* and other cases was whether severance damages were available to the owners of property that was separate from the property directly affected by the condemnation, whereas here, both parcels are directly affected. Plaintiff contends that whether separate parcels that are both subject to condemnation, at least in part, should be treated (and valued) as a single parcel should be dictated by the "highest and best

---

[3] Defendants do not challenge the central premise underlying plaintiff's position—namely, that, if two contiguous parcels are sufficiently unified, one may be deemed *not* to have suffered compensable severance damages. In other words, defendants do not challenge the notion that the "unity" theory can be applied in the condemner's favor. Accordingly, we assume, without deciding, that it can be so applied.

use" principle, not the unity principle. In support of that contention, plaintiff points out that Oregon condemnation law requires that the just compensation due a property owner be based on the value of the property at its highest and best use. In plaintiff's view, the property at issue here should be regarded as a single unit because its highest and best use is as "an integrated commercial business enterprise." That is, plaintiff takes the position that the highest and best use of the two parcels at issue here is as a motel and restaurant that are operated in conjunction with each other and, thus, that the two parcels should be treated as an integrated whole.

Plaintiff's second primary argument is that, even if the unity principle does apply, the parcels are subject to unity of control—which, plaintiff contends, suffices to establish unity of ownership—and that there is sufficient evidence of unity of use to present a jury question.

Defendants respond that plaintiff could treat the two parcels as a single parcel only if they are subject to both unity of ownership and unity of use, and that unity of control is simply not relevant to the analysis. Defendants argue that, because the two parcels were separately owned when plaintiff filed the condemnation complaint, there is no unity of ownership. They also argue that the two parcels are not subject to unity of use.

■■  Plaintiff correctly asserts that Oregon condemnation law requires that just compensation be based on the value of the property at its highest and best use. *See Dept. of Transportation v. El Dorado Properties.*, 157 Or App 624, 627-28, 971 P2d 481 (1998) ("A landowner is entitled to receive just compensation for land taken for a public use, based on the value of the land at its highest and best use, which is the most profitable likely use of the property at the time of the taking."). However, we reject plaintiff's argument that separate parcels must be treated as one if using them in conjunction with each other is their highest and best use. Plaintiff does not explain, and we do not understand, why that principle should govern the determination of whether separate parcels may be treated as one. Taken to its logical conclusion, plaintiff's view would require that, if the highest and best use of any two adjoining parcels were as a motel

operating in conjunction with a restaurant, the parcels must be treated as one even if their respective owners are total strangers to each other and the parcels are currently being put to wholly unrelated uses. In such a case, we would be hard pressed to say that loss of access to one parcel is not compensable because the "highest and best" use would allow access through the other parcel.

In all events, the distinction that plaintiff draws between this case and *H.S.B.*—that both parcels are directly affected by the taking here, whereas, in *H.S.B.*, only one parcel was—is not meaningful. The underlying issue in *H.S.B.* was the same as in this case—namely, whether two distinct parcels should be treated as a single parcel for purposes of determining the effect that a partial taking will have on the remaining property. Plaintiff takes the position that the remaining portion of the motel parcel will suffer no damages from loss of access to Barnett Road because it will still have access through the restaurant parcel. Because the underlying issue is the same, the unity principle governs the determination of whether the parcels should be treated as one.

■ We next turn to plaintiff's argument that, if the unity principle does apply, unity of control suffices to establish unity of ownership. It contends that the modern trend in condemnation cases is to equate unity of control with unity of ownership. Plaintiff asserts that the two parcels are operated as an integrated whole and are subject to the same encumbrances under financing agreements. Plaintiff also points out that, regardless of the nominal ownership of the two parcels, the Jensens are in fact the sole decision-makers for both parcels.

Plaintiff's argument is not well taken, because it conflicts with the court's reasoning in *H.S.B.* That case involved two adjoining parcels; one was owned by a partnership, and the other was owned by a corporation that was controlled by three of the four partners in the partnership. This court concluded that there was "substantial identity of ownership and control of the two parcels" and that they were thus properly treated as one parcel. *City of Salem v. H.S.B.*, 75 Or App 556, 565, 707 P2d 73 (1985), *rev'd*, 302 Or 648, 733 P2d

890 (1987). The Supreme Court reversed, declining to "disregard the corporate form and look to the identity of individual shareholders in order to determine unity of ownership, whether such unity be determined by substantial or by complete identity of record title holders of the separate parcels at the date of the taking." 302 Or at 655. In other words, regardless of who controlled the corporation, there was no unity of ownership, so the parcels could not be treated as one. Thus, whatever the modern trend in other jurisdictions may be, the Oregon Supreme Court has rejected the "unity of control" theory. It follows that we may not adopt and apply it here.

In this case, when plaintiff filed the action, the Jensens owned one parcel and Pilothouse 60 owned the other. The trial court correctly concluded that unity of ownership does not exist and, thus, that the two parcels cannot be treated as a single, larger parcel.[4]

■ We turn next to whether dismissal was a proper remedy. We conclude that it was. ORS 35.346(1) provides that, "[a]t least 40 days before the filing of any action for condemnation of property or any interest in property, the condemner shall make an initial written offer to the owner or party having an interest * * *." We have previously stated, in *dicta*, that the prefiling offer required by ORS 35.346(1) is a "necessary predicate to the filing of the action," *ODOT v. Kesterson*, 182 Or App 105, 110, 47 P3d 546, *rev den*, 335 Or 42 (2002), and that failure to comply strictly with the statute is grounds for dismissal of the action, *Caughell*, 35 Or App at 148. Although those statements are *dicta*, they are correct. Under the plain text of the statute, a condemner lacks authority to file a condemnation action without first making a written offer to the property owner at least 40 days in advance. Because the requirement is mandatory, the property owner has the right to insist that the condemner strictly comply with it by seeking dismissal if the condemner does not.[5] *See Highway Comm. v. Hurliman et ux*, 230 Or 98, 117,

---

[4] Because we conclude that the two parcels were not subject to unity of ownership, we need not address the parties' arguments concerning unity of use.

[5] We note that the legislative history of ORS 35.346 is silent as to the remedy for a condemner's failure to comply with the written offer requirement.

368 P2d 724 (1962) (statutory prerequisites to filing of a condemnation action are intended to protect property owners from unnecessary litigation); *Moore Mill & Lbr. Co. v. Foster*, 216 Or 204, 251, 336 P2d 39, *reh'g den*, 337 P2d 810 (1959) (the "obvious purpose" of prefiling requirements is "to insure that legal action is not too precipitous").

The question thus is whether plaintiff made a proper written offer. *State Highway Com. v. Lytle*, 234 Or 188, 380 P2d 811 (1963), is instructive in that regard. In *Lytle*, the defendants sought an award of attorney fees under *former* ORS 366.380(9) (1961), *repealed by* Oregon Laws 1971, chapter 741, section 38, which provided for attorney fees for the property owner unless, before filing the action, the condemner tendered to the owner an amount greater than or equal to the compensation awarded by the jury.[6] The condemner in *Lytle* initially made an offer of $20,150 in a letter that described the property that it sought to acquire. 234 Or at 189. It later filed an action to condemn the described property. In two amendments to the complaint, the condemner reduced the amount of property that it sought to acquire. Before trial, it offered the defendants $18,000 for the reduced amount of property, which they declined. Following trial, the jury valued the property at $19,500. The trial court denied attorney fees because the condemner's initial offer of $20,150 exceeded the jury's verdict.

The defendants appealed the denial of attorney fees. The Supreme Court stated,

> "If there has been a material reduction in the amount of property involved in the taking between the event of the tender and the event of the jury's evaluation, there is no basis of comparison of the two values specified by the statute. A tender for property of a given size and description cannot be held to be a tender for property materially reduced in quantity."

---

[6] *Cf.* ORS 35.346(7)(a) (2005), *amended by* Or Laws 2007, ch 1, § 4 (providing that, if a condemnation action goes to trial, the property owner is entitled to an award of attorney fees and other costs if the amount of compensation awarded in the verdict exceeds the highest written offer submitted by the condemner at least 30 days before trial).

*Id.* at 190. The court went on to hold that, when the property for which compensation is awarded is materially less than that for which the prefiling tender was made, the tender is not available to the condemner in determining the property owners' right to attorney fees, because it is as though no tender "for the property actually taken had been made at all." *Id.* at 190-91.[7]

In this case, the property that plaintiff seeks to acquire from the Jensens is "materially less" than the property for which the written offer was made—namely, the affected portion of *both* parcels. The same is true of the property that plaintiff seeks to acquire from Pilothouse 60. Thus, applying the reasoning of *Lytle*, it is as though no offer for the affected portion of either parcel was made at all. It follows that plaintiff failed to comply with ORS 35.346(1). Accordingly, the trial court did not err in dismissing the action.

Our conclusion that the trial court correctly dismissed the action also disposes of plaintiff's challenge to that court's award of attorney fees.

Affirmed.

---

[7] We note that the remedy in *Lytle* for failure to make a proper tender was to award the property owners their attorney fees. The remedy was not to dismiss the action. The statutory scheme has changed since *Lytle* was decided. When *Lytle* was decided, the condemner was not statutorily required to make a tender to the property owner as a prerequisite to filing the condemnation action. ORS 35.346 was not enacted until 1973, *see* Or Laws 1973, ch 617, § 2, and there was no statutory predecessor to ORS 35.346(1). *See generally former* ORS 366.370 - 366.393 (1959), *repealed by* Or Laws 1971, ch 741, § 38. Thus, a condemner was not precluded from filing an action without first making a tender for the property. The only consequence for failure to do so was liability for the property owner's attorney fees. Hence the result in *Lytle*.

When the legislature enacted ORS 35.346 in 1973, it created a new statutory prerequisite to filing a condemnation action—namely, making a written offer to the property owner. As noted above, because the requirement is mandatory, the property owner may seek dismissal of the action if the condemner fails to strictly comply with it.