Argued and submitted November 6, 2012, affirmed June 26, 2013

STATE OF OREGON,
by and through its
Department of Transportation,
*Plaintiff-Appellant,*

*v.*

Kulwinder SINGH;
Marvin E. Horn and Patricia A. Horn,
husband and wife;
Raymond E. Ellis;
and Corvallis Market, Inc.,
an Oregon corporation, dba Corvallis Market,
*Defendants-Respondents.*

Linn County Circuit Court
110469; A149566

306 P3d 745

Karla H. Ferrall, Assistant Attorney General, argued the cause for appellant. With her on the briefs were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Adam R. Kelly argued the cause for respondents Kulwinder Singh and Corvallis Market, Inc. With him on the brief were Cynthia M. Fraser and Garvey Schubert Barer.

No appearance for respondents Marvin E. Horn and Patricia A. Horn.

No appearance for respondent Raymond E. Ellis.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

DUNCAN, J.

## DUNCAN, J.

In this condemnation case, plaintiff, the Oregon Department of Transportation, appeals a judgment of the trial court dismissing its condemnation action against defendant.[1] On defendant's motion for summary judgment, the trial court concluded that plaintiff's prelitigation offer, required by ORS 35.346(1), to acquire an easement on part of defendant's property and to compensate him for the loss of rights of access to public roads was insufficiently definite because it did not specify the road access that defendant's parcel would have after the acquisition. The court dismissed the action without prejudice, and plaintiff appeals.[2] We affirm.

The relevant facts are undisputed. Highway 34 runs west and east and Peoria Road runs north and south, and they intersect in Linn County. Defendant owns the parcel of land at the southeast corner of that intersection, and he operates a convenience store on the site. Defendant owns two specific rights of access from the north side of his property to Highway 34, and he has a common-law right of access from the west side of his property to Peoria Road. Thus, defendant has three rights of access from his property to public roads.

As part of a road improvement project at the intersection, plaintiff sought to eliminate defendant's two specific rights of access to Highway 34. It also sought to acquire a permanent easement over property on the west side of defendant's parcel, which would eliminate defendant's common-law right of access to Peoria Road. In order to preserve access to defendant's property, plaintiff planned to build a new road from Peoria Road to defendant's property. The new road would begin two parcels south of defendant's parcel. In order to build the new road, plaintiff planned to acquire easements over the two parcels south of defendant's parcel.

---

[1] We refer to both Kulwinder Singh and Corvallis Market, Inc., which Singh operates, as "defendant." The other defendants are not involved in this appeal.

[2] In addition to challenging the dismissal of the action, plaintiff assigns error to the court's award of attorney fees and costs to defendant, solely on the ground that, because the court erred in dismissing the action, it also erred in awarding attorney fees and costs. Because, as explained below, we affirm the dismissal, we also affirm the award of attorney fees and costs.

In December 2010, plaintiff provided defendant a packet of documents including a letter and "Acquisition Summary Statement" offering to pay $64,887 for both (1) the permanent easement on the west side of defendant's parcel and (2) damages for the decrease in value of the remaining property caused by the easement and the elimination of the rights of access to Highway 34.[3] Plaintiff also included the appraisal upon which the offer was based and maps of the proposed easements for the new road that would provide access to defendant's property from Peoria Road. The letter informed defendant that "[t]he legal document and enclosed agreements, if any, cover the terms of our proposed real property agreement." We refer to the legal document that was enclosed as the proposed real property agreement.

The proposed real property agreement provided that defendant would grant plaintiff an easement between his property and Peoria Road and would grant plaintiff all "abutter's rights of access" between his property and both Peoria Road and Highway 34. Specifically, the proposed agreement provided that defendant ("grantor") granted plaintiff ("grantee") an easement over property on the west side of defendant's parcel

"TOGETHER WITH all abutter's rights of access, if any, between [Highway 34] and Grantor's remaining real property.

"ALSO TOGETHER WITH all abutter's rights of access, if any, between the Peoria Road and Grantor's remaining real property, EXCEPT, however,

*"Grantee shall either construct a public frontage road, or provide some other access road on the East side of Peoria Road, and Grantor and Grantor's heirs, successors and assigns, shall be entitled to access said road for any purpose upon application filed with Grantee and issuance of a road approach permit pursuant to applicable statutes and regulations. Said road shall be connected to the main highway or to other public ways only at such places as Grantee may select."*

(Capitalization in original; emphasis added.)

---

[3] Plaintiff's offer of $64,887 also included compensation for a temporary easement that it sought to acquire on a different part of defendant's parcel for use during the road improvement project. The terms of the offer relating to that easement are not at issue on appeal, and we do not discuss them.

In the appraisal, the appraiser estimated just compensation for plaintiff's proposed taking of defendant's property, which included $18,649 for the permanent and temporary easements and $46,238 for damages to remaining property. The appraisal did not "utilize any hypothetical conditions" and did not note any extraordinary assumptions related to rights of access. Nevertheless, the appraiser made significant assumptions about the access that defendant would have after the road improvement project was complete that were not reflected in the proposed real property agreement. The appraiser summarized those assumptions early in the appraisal report:

"Access to the property after the road improvement project will be via a new frontage road. This frontage road will terminate just south of the subject property and intersect with Peoria Road two parcels to the south. The roadway easement on the parcel immediately south of the subject includes sufficient area for delivery truck circulation & access, including a truck turn-around.

"The subject is suitable for use as a convenience store both before and after the taking. However, the subject has inferior attributes after the taking."

In the description of the property in the body of the appraisal, the appraiser noted that

"[a] new frontage road which intersects with Peoria Road two parcel[s] south of the subject will extend northward and provide sole access to the subject property. The design of this frontage road allows for delivery truck circulation to/from Peoria Road as well as for sufficient vehicle turnaround once deliveries are made. The road is also sufficient in width to accommodate typical vehicle traffic patronizing the convenience store as well as any new development constructed on the vacant land immediately south of the subject."

And, in evaluating the highest and best use of the property after the taking, the appraiser stated:

"The convenience store building is highly visible from both road frontages after the taking; however, access is impaired. The loss of land to the road easement still provides

adequate site area for parking and vehicle circulation to support the convenience store. A review of other convenience stores in the market area suggest[s] that the subject's current use remains viable after the taking; however, its value is less due to the impaired access and locational attributes. The appraiser evaluated the potential for the taking causing a change in use to the subject property; however, the subject still has characteristics desirable for continued use as a convenience store. * * *

"* * * While delivery truck access is impaired within the property after the taking, the frontage road to the south and the truck turnaround to be developed southeast of the building are sufficient for delivery truck circulation."

Defendant declined plaintiff's offer, and, in February 2011, plaintiff filed its condemnation complaint. The complaint substantially incorporated the text of the proposed real estate agreement, including the three paragraphs set out above, 257 Or App at 325, the last of which promised that plaintiff would "either construct a public frontage road, or provide some other access road on the East side of Peoria Road" to provide access to defendant's property.

Defendant filed a motion for summary judgment, arguing that plaintiff's offer was insufficient under ORS 35.346. Defendant contended:

"Pursuant to ORS 35.346(2), [plaintiff] must make a good faith offer of compensation to the property owner accompanied by the appraisal that is the basis for the amount of just compensation offered. [Plaintiff's] offer to [defendant] did not reserve an access to the property. The appraisal which accompanied the offer, and which was the statutory basis for the offer, assumed that there would be a public access way to the property after the taking, when in fact, none was reserved in the offer. Accordingly, the appraisal did not consider all compensable damages to the remaining property owned by [defendant] as required under ORS 35.346."

Defendant argued that plaintiff's failure to comply with ORS 35.346 required judgment for defendant as a matter of law and dismissal of the complaint.

After oral argument, the trial court agreed with defendant that the offer was insufficiently definite. It also concluded that, in the offer, plaintiff was required to set out the metes and bounds description of the new access road. As a result of the insufficient offer, the court reasoned, plaintiff lacked statutory authority to file for condemnation. Consequently, the court dismissed the case, giving plaintiff leave to make a new, more specific offer to defendant and, if no agreement were reached, to refile the condemnation action. Plaintiff appeals.

As explained below, we agree with the trial court that plaintiff's offer was insufficient to meet the requirements of ORS 35.346 because the offer's valuation of defendant's damages rested on assumptions made by the appraiser that were not included in the proposed real property agreement. Specifically, the appraiser assumed that plaintiff would build a public access road and truck turnaround sufficient to support the delivery and customer traffic necessary to defendant's business, but the proposed real property agreement did not include a promise of public access or any terms related to the sufficiency of the access for that purpose. As a result, plaintiff did not offer just compensation "for any compensable damages to remaining property," as required by ORS 35.346(1); instead, it offered compensation for a set of hypothetical damages that were different from the damages that would result from defendant's acceptance of the proposed real property agreement.

We also agree with the trial court that, because the offered terms and the offered damages did not match, the offer was insufficient as a matter of law and dismissal was the appropriate remedy. However, we disagree with the trial court that plaintiff was required to describe the access road in metes and bounds in the offer. So long as the terms of the offer match the assumptions on which the offered amount of damages is calculated, ORS 35.346 is satisfied. The parties' appraisers, and, if necessary, the jury, can account for any uncertainty in the terms of the offer or, subsequently, the complaint in their evaluations of defendant's damages.

As relevant here, ORS 35.346 requires a condemner to offer just compensation for property interests that it

intends to acquire, as well as any damages to the remaining property, before filing a condemnation action. The statute provides, in part:

"(1) At least 40 days before the filing of any action for condemnation of property or any interest in property, the condemner shall make a written offer to the owner or party having an interest to purchase the property or interest, and to pay just compensation therefor and for any compensable damages to remaining property.

"(2) The offer shall be accompanied by any written appraisal upon which the condemner relied in establishing the amount of compensation offered."

The purpose of the prelitigation negotiation requirement is to protect property owners from unnecessary litigation. *Dept. of Transportation v. Pilothouse 60, LLC*, 220 Or App 203, 213-14, 185 P3d 487, *rev den*, 345 Or 417 (2008) (citing *Highway Com. v. Hurliman et ux*, 230 Or 98, 117, 368 P2d 724 (1962)).

Plaintiff contends that it complied with ORS 35.346 by providing defendant with an offer to purchase the property that it intended to acquire, accompanied by an appraisal, more than 40 days before it filed its complaint. In its view, that satisfied the statute; it argues that any uncertainty regarding the quality of the access that defendant will have after the project is a question of damages, and that is an issue for the jury to resolve at trial. Plaintiff interprets its obligation under ORS 35.346 too narrowly.

That statute required plaintiff to "make a written offer to [defendant]" (1) "to purchase the property or interest"; (2) "to pay just compensation therefor"; and (3) to pay just compensation "for any compensable damages to remaining property." Compensable damages to remaining property are "any depreciation in the fair market value of the remaining property caused by the taking." *Dept. of Trans. v. Lundberg*, 312 Or 568, 574, 825 P2d 641, *cert den*, 506 US 975 (1992). Unless the condemner takes possession of the property before filing a condemnation action, which plaintiff did not do in this case, the value of the property is measured as of the date when the condemnation action is commenced. *Id.* at 574 n 6.

Depreciation in fair market value is determined by subtracting fair market value after the taking from fair market value before the taking. In addition, the valuation must be for the property in its highest and best use, that is, the most profitable and likely use of the property. *Id.* at 574. Accordingly, to calculate "compensable damages to remaining property," plaintiff, or the appraiser, must subtract the fair market value of the remaining property after the taking from the fair market value of that portion of the property before the taking. The fair market value of the property after the taking must be calculated based on the highest and best use, regardless of whether that use is the same as it was before the taking.

Here, the problem arises in valuing the remaining property after the taking. As explained above, the proposed real property agreement provided that, after the road improvement project was complete, defendant would have access to his property through "a public frontage road, or * * * some other access road." That is, at a minimum, defendant would have access to an access road that plaintiff did not promise would be open to the public. Plaintiff also did not promise that the access road would have any particular width or a truck turnaround; it did not promise that the access road would be in any particular location other than "on the East side of Peoria Road"; and it retained sole discretion to determine where the access road would meet "the main highway or * * * other public ways."

Plaintiff makes two arguments in support of its contention that, although the proposed real property agreement did not include any promise to provide a road with those attributes, we should conclude that the offer nevertheless included a road with those attributes. First, plaintiff points out that the packet it provided to defendant included a map showing the intended easements on defendant's neighbors' parcels. Second, it argues that the access road will necessarily be a public road because it will be within the easements that plaintiff intends to acquire on defendant's neighbors' parcels and it could not acquire those easements through condemnation if the road were for private use.

We reject those arguments because to accept them would contravene the plain meaning of the term "offer" in ORS 35.346. An "offer," as used in the statute, means "a display of willingness to enter into a contract *on specified terms*, made in a way that would lead a reasonable person to understand that an acceptance, having been sought, will result in a binding contract." *Black's Law Dictionary* 1113 (8th ed 2004) (emphasis added). Here, the terms of the written contract that plaintiff provided—the proposed real estate agreement—included only the promise to provide "a public frontage road, or * * * some other access road." If defendant had signed the agreement, thereby entering into a binding contract, that promise would have been the only term in the contract regarding road access; defendant would have had no right to enforce any promise to provide a road of a certain width, with a turnaround, in a particular place, or connecting to any particular road. As plaintiff conceded in the trial court, "when the offer is made, [defendant] gets [the maps that were in the packet], the metes and the bounds that are in the [maps] *subject to the [s]tate changing anything*." (Emphasis added.) That is, none of the specific attributes of the road were part of the offer; plaintiff could have modified any of those attributes even if defendant had agreed to the proposed real property agreement. Thus, the offer promised only that defendant would have access to "a public frontage road, or * * * some other access road."

Although plaintiff promised only an "access road," it valued defendant's damages based on the appraisal, which, as discussed above, assumed that

"[a] new frontage road which intersects with Peoria Road two parcel[s] south of the subject will extend northward and provide sole access to the subject property. The design of this frontage road allows for delivery truck circulation to/from Peoria Road as well as for sufficient vehicle turnaround once deliveries are made. The road is also sufficient in width to accommodate typical vehicle traffic patronizing the convenience store as well as any new development constructed on the vacant land immediately south of the subject."

The appraisal relied on that information in calculating the damages and also used that information to conclude that

"the subject still has characteristics desirable for continued use as a convenience store"; thus, its highest and best use would not change after the taking. As a result, plaintiff based its offer of compensation on an evaluation of defendant's damages that was based on conditions that were not part of the proposed real estate agreement.

As noted above, implicit in the concept of an offer is the understanding that the amount offered is specifically tied to the terms of the offer. That is, where a plaintiff is statutorily required to make "a written offer *** to pay just compensation *** for any compensable damages to remaining property," ORS 35.346(1), the amount of compensation must be based on an evaluation of the compensable damages that the remaining property will suffer *if the defendant accepts the terms of the real property agreement.* The amount of compensation cannot be tied to hypothetical terms that are more favorable to the plaintiff than the actual terms of the agreement. Thus, in this case, plaintiff did not provide an "offer *** to pay just compensation *** for any compensable damages to remaining property." ORS 35.346(1).

We turn to the remedy. In dismissing, the trial court relied on *Pilothouse 60, LLC*, in which we explained that the requirement of a sufficient offer in ORS 35.346(1) is mandatory, and, consequently, "the property owner has the right to insist that the condemner strictly comply with it by seeking dismissal if the condemner does not." 220 Or App at 213. In that case, the defendants, as individuals, owned a parcel holding a motel, and the defendants' corporation owned an adjacent parcel that held a restaurant.[4] Each parcel had road access, and the motel parking lot was also accessible through the driveways for the restaurant. The plaintiff sought to condemn a strip of land that would take

---

[4] The defendants' corporation initially owned both parcels, and the plaintiff made a single offer for a taking that would affect both parcels. The corporation declined that offer and subsequently transferred one parcel to the defendants as individuals "to 'clarify' that the two parcels are separate properties and should not be treated as a single parcel for appraisal purposes." *Id.* at 208. Then the plaintiff made a second offer—which still treated the two parcels as a single parcel—to the defendants as individuals and to their corporation. The appeal concerned only the second offer.

the motel's road access but leave the restaurant's access. It made a single offer to the defendants and their corporation that treated the two parcels as one larger parcel and did not offer compensation for damages from the elimination of the motel's road access. *Id.* at 208.

We determined that, because the parcels lacked unity of ownership, they had to be treated individually. As a result, the plaintiff's single offer was insufficient to meet its obligation under ORS 35.346(1) as a matter of law. We explained that "the prefiling offer required by ORS 35.346(1) is a necessary predicate to the filing of the action." *Id.* at 213 (internal quotation marks omitted). Consequently, dismissal was an appropriate remedy for the plaintiff's failure to make proper offers for the parcels. *See also State Highway Com. v. Lytle*, 234 Or 188, 190-91, 380 P2d 811 (1963) (when a condemner makes an offer for property materially different from that which is actually taken, it is as if no offer "for the property actually taken ha[s] been made at all").

Similarly, here, as explained above, the offer was insufficient as a matter of law. Instead of offering to compensate defendant for the damages that his remaining property would suffer as a result of the terms that plaintiff offered, plaintiff offered to compensate defendant for a different taking, one that happened to be less disadvantageous to defendant. That is not, as plaintiff contends, just a matter of the amount of damages. Rather, the discrepancy is between what plaintiff offered to take and what it offered to compensate defendant for. As a result, plaintiff did not make the required offer. Thus, as in *Pilothouse 60, LLC*, here, defendant had the right to seek dismissal for plaintiff's failure to comply with ORS 35.436(1), and the trial court did not err in dismissing the action.[5]

We part ways with the trial court in evaluating the degree of specificity required in the offer. As noted, the trial court held that plaintiff had to provide a description of the post-taking access to defendant's property in metes and bounds; otherwise, it concluded, defendant would not be able

---

[5] As noted above, the trial court dismissed with leave for plaintiff to make a new offer and, if necessary, refile the condemnation action.

to evaluate his damages with sufficient certainty to negotiate. We disagree. Nothing in ORS 35.346 requires such specificity. A condemner may make an offer before the specifics of future access are certain; ORS 35.346(1) requires only that, when it does so, the amount of the offer must reflect that uncertainty.

We emphasize that we hold only that plaintiff's offer and its appraisal must be based on the same terms; that is, the appraisal, and, consequently, the valuation of defendant's damages in the offer, must be based on the terms that plaintiff promises in the proposed real estate agreement. Under the facts of this case, then, plaintiff might include the basic attributes of the road that it provided to its appraiser—its approximate width, turnaround, and intersection with Peoria Road—in its proposed real property agreement, or it might leave the proposed real property agreement as it is and have the appraiser appraise defendant's remaining property in light of plaintiff's promise to provide "a public frontage road or some other access road." Either course—or any number of other, hybrid possibilities—would comply with our holding. Although an appraisal based on the current terms of the proposed real property agreement would include substantial uncertainty, an appraiser, like a jury, can account for uncertainty in his or her valuation of the remaining property.

Underlying the parties' arguments in this case is the question of who should bear the risk that, after the parties have agreed to a price, some aspect of the project must be modified. We recognize plaintiff's concern that, if it must make specific promises about future access, it may have extremely limited options for organizing the condemnation process for a large project. We believe that, in enacting ORS 35.436, the legislature struck a balance between flexibility for condemners and protection for landowners. The statute does not permit a condemner to shift the risk of a future change of plans onto the property owner by offering compensation based on conditions that are not binding on the condemner. Instead, a condemner may use general conditions to avoid making firm commitments early in a project, but if it does so, it must pay compensation based on the remaining

value of the property in light of those general conditions, not in light of the more specific conditions that it anticipates but does not promise.

Affirmed.