HADLOCK, J.
*419 As the Tri-County Metropolitan Transportation District of Oregon (TriMet) prepared to construct the Portland-Milwaukie light-rail line, it acquired interests in certain properties that the new rail line would cross or otherwise affect, condemning some property interests pursuant to the General Condemnation Procedure Act, ORS chapter 35. Among the affected properties is the one at issue in this case: a corner lot located on SE Monroe Street in Milwaukie (the Walnut Hill property) owned by Walnut Hill LLC. TriMet acquired both a temporary construction easement on part of that property and a permanent dedication of a strip of the property that runs along SE Monroe Street. In this condemnation action, TriMet sought to establish that the fair market value of those property interests was $19,700. Walnut Hill LLC asserted that the condemned property interests were worth substantially more. The case went to trial and a jury returned a verdict valuing the acquired interests at $118,117. That award was reflected in a general judgment and, in a supplemental judgment, the trial court awarded Walnut Hill attorney fees and costs.
*744 On appeal from both judgments, TriMet contends that the trial court erred by excluding evidence that a trust that owned Walnut Hill LLC also had ownership interests in some neighboring properties; according to TriMet, that evidence would have shown that its acquisition of interests in the Walnut Hill property did not decrease the value of the remainder of the property as much as it would have otherwise. We disagree with TriMet's contention that the ownership evidence was admissible for the purposes for which TriMet offered it. Accordingly, we reject the three assignments of error in which TriMet challenges the trial court's evidentiary rulings and seeks reversal of the general judgment. We therefore also reject TriMet's fourth assignment of error, which is based solely on TriMet's assertion that it will be entitled to reversal of the supplemental judgment awarding attorney fees and costs if its "appeal from the general judgment is successful." Consequently, we affirm.
For purposes of this appeal, the pertinent facts are undisputed. The Walnut Hill property consists of a *420 single-family residence on a roughly half-acre lot. George and Marie Corti acquired the property in the 1950s and used it primarily for residential rental. When the couple died, the property transferred to the George Corti Trust, for which the couple's children are cotrustees.
The north side of the Walnut Hill property borders SE Monroe Street (which runs east to west) and most of the west side of the property borders a railroad right of way. Before the light-rail line was constructed, vehicles could be parked on or adjacent to the property in three ways. First, through a licensing agreement, vehicles could be driven across the railroad right of way to the back (south portion) of the property. That licensing agreement was terminated in association with construction of the light-rail line; termination of the agreement is not pertinent to the issues on appeal. Second, vehicles could park along SE Monroe Street, along the north edge of the property. Third, a single-car garage was located on the property, with a driveway that provided access from SE Monroe Street at a curb cut.[1]
TriMet did not condemn the entire Walnut Hill property in association with constructing the light-rail line. Rather, TriMet generally acquired two property interests: (1) a temporary construction easement, and (2) a permanent "dedication in lieu of fee" of an east-west strip of land at the north edge of the property, along Monroe Street. TriMet also constructed a new retaining wall on the property, which is sloped. As a result of those actions and others, vehicles may not lawfully be parked on SE Monroe Street in front of the property. In addition, the curb cut for the garage driveway has been eliminated because of sight-line limitations, rendering the garage essentially unusable for parking. Thus, construction of the light-rail line has resulted in the elimination of both on-site parking for the Walnut Hill property and any adjacent on-street parking.
TriMet initiated this condemnation action after the parties were unable to agree to the compensation that *421 TriMet owed Walnut Hill LLC in association with acquiring the property interests. TriMet alleged in its complaint that it owed compensation of only $19,700. In its answer, Walnut Hill, LLC asserted that TriMet owed it $279,679.
The discrepancy in the parties' calculations partly related to the light-rail project's effect on the availability of legal parking associated with the Walnut Hill property and any consequent reduction in that property's fair market value. As noted, after construction of the light-rail line and associated "dedication in lieu of fee" of the strip of land running along the north side of the property, parking would no longer be available either on the property itself or on SE Monroe Street in front of the property. TriMet sought unsuccessfully to present evidence that the George Corti Trust, which owns Walnut Hill LLC, also owns 100 percent of Monroe Street LLC, which itself owns properties immediately adjacent to the Walnut Hill property along SE Monroe Street (the Monroe Street properties). TriMet also offered testimony of Walnut Hill LLC's architect (put on the record in an offer of proof) acknowledging that, if the *745 Walnut Hill and Monroe Street properties had "common ownership," the owner of the Walnut Hill property could more easily obtain rights to access across the Monroe Street properties (by easement or otherwise) to an area of the Walnut Hill property that could be used for on-site parking. By introducing that evidence, TriMet hoped to argue that what it sometimes called the "common ownership" of the properties mitigated the loss in value that would otherwise be associated with the loss of parking attributable to construction of the light-rail line.
For analogous reasons, TriMet also sought to present evidence that the George Corti Trust owns 52 percent of Chestnut Hill Corporation, which owns the property immediately across SE Monroe Street from the Walnut Hill property, and that tenants of the Walnut Hill property had sometimes been allowed to park in a lot on the Chestnut Hill property.[2] TriMet hoped to use the Chestnut Hill evidence to support an argument that the ability to use the parking lot *422 on that property also mitigated the reduction in value to the Walnut Hill property associated with the loss of parking.
The trial court granted Walnut Hill LLC's pretrial motions in limine to exclude that evidence. With respect to the neighboring properties owned by Monroe Street LLC, the court initially ruled that the record lacked evidence of "unity of use" between those properties and the Walnut Hill property and stated that the Walnut Hill property "should be treated separately, not part of a larger group." It later adhered to that ruling, explaining that "[t]hey are separate pieces of property" with "separate homes." With respect to the Chestnut Hill property, the trial court ruled that evidence about prospective availability of parking there for people associated with the Walnut Hill property was too speculative. At trial, the jury heard evidence from several witnesses, including appraisers, land-use planners, and real-estate developers and brokers, many of whom discussed the loss of parking associated with the light-rail project, along with other effects that the project had on the Walnut Hill property. The jury determined that TriMet owed Walnut Hill LLC $118,117 in compensation.
On appeal, TriMet assigns error to the trial court's rulings on the pertinent motions in limine . With respect to the properties owned by Monroe Street LLC, TriMet asserts that evidence of their ownership was relevant because it would show "the potential for future development * * * through modifications to both the Walnut Hill and Monroe Street Properties[.]" TriMet relies on State Dept. of Transportation v. Jeans , 80 Or. App. 582, 585, 723 P.2d 344, rev. den. , 302 Or. 342, 728 P.2d 867 (1986), which it quotes for the proposition that "possible future development can be taken into account in valuation." TriMet asserts that the trial court's exclusion of evidence about the ownership of the Monroe Street properties and how that "common ownership" (as TriMet sometimes has called it) would affect the ease of developing parking for the Walnut Hill property cannot be squared with that principle from Jeans . TriMet makes a similar argument with respect to how it would have used evidence "that tenants at Walnut Hill currently enjoyed parking at Chestnut Hill, a property effectively controlled by the same people who controlled Walnut Hill." TriMet contends that the jury should have *423 been allowed to consider "[t]he import of that evidence with respect to value." In response, Walnut Hill LLC asserts that the trial court did not err when it excluded the ownership evidence, as that evidence described potential benefits available only to the current owners of the Walnut Hill property and "not available to prospective purchasers."
We review for legal error the trial court's determination of whether the proffered evidence was relevant. ODOT v. Alderwoods (Oregon), Inc. , 358 Or. 501, 517-18, 366 P.3d 316 (2015). We review the court's decision to exclude otherwise relevant evidence on the ground that it would confuse or mislead the jury for abuse of discretion. Dept. of Trans. v. Alf , 165 Or. App. 162, 167-68, 995 P.2d 1197, rev. den. , 330 Or. 470, 8 P.3d 220 (2000).
*746 The parties' arguments implicate basic principles of condemnation law. Article I, section 18, of the Oregon Constitution provides that private property "shall not be taken for public use * * * without just compensation." That constitutional provision limits the government's power of eminent domain by requiring it "to pay for the appropriation of vested property rights." Alderwoods , 358 Or. at 509, 366 P.3d 316. In this case, Walnut Hill LLC does not challenge TriMet's authority to acquire the Walnut Hill property interests in association with constructing the light-rail line. For its part, TriMet acknowledges that it is obligated to compensate Walnut Hill LLC for that taking. The sole dispute relates to proper determination of "just compensation" and whether the excluded evidence was relevant to that determination.
Oregon courts have described general principles that guide determination of just compensation. "In the case of a partial taking of property, just compensation is the fair market value of the property taken plus the depreciation in fair market value, caused by the taking, of the portion not taken." ODOT v. Hughes , 162 Or. App. 414, 419, 986 P.2d 700 (1999). "Fair market value is defined as the amount of money the property would bring if it were offered for sale by one who desired, but was not obliged, to sell and was purchased by one who was willing, but not obliged, to buy." Dept. of Trans. v. Lundberg , 312 Or. 568, 574, 825 P.2d 641, cert. den. , 506 U.S. 975, 113 S.Ct. 467, 121 L.Ed.2d 374 (1992). All considerations that might fairly be *424 given weight in negotiations between a seller and prospective buyer should be taken into account, and evidence relevant to those considerations may be admissible. Id . at 575, 825 P.2d 641.
TriMet relies on those general propositions to support its argument that the ownership evidence was relevant in this case. According to TriMet, that evidence would have shown that the owner of the Walnut Hill property could effectively negotiate with the owners of the Monroe Street and Chestnut Hill properties to obtain parking. Because Walnut Hill LLC asserted that the Walnut Hill property dropped in value as a result of the loss of on-site and adjacent parking, TriMet contends that it was entitled to introduce evidence of how that loss in value could have been reduced or eliminated.
The fundamental flaw in TriMet's argument is that the benefits it posits from the relationship among the current property owners flow only to Walnut Hill LLC and not to any purchaser that might acquire the Walnut Hill property. Accordingly, those benefits are not relevant to a determination of the property's fair market value, which "is determined based on what a hypothetical but willing purchaser would pay for the property." Hughes , 162 Or. App. at 420, 986 P.2d 700. A hypothetical purchaser of the Walnut Hill property would not have the same kind of relationship that Walnut Hill LLC has with the entities that own the Monroe Street and Chestnut Hill properties. Accordingly, any advantageous parking access that Walnut Hill LLC might be able to obtain because of its relationship to those other entities is irrelevant to the determination of what a different purchaser would be willing to pay for that property. Although such a purchaser presumably would account for the lack of parking in determining a price that it would willingly pay for the Walnut Hill property, that purchaser would have no reason to pay more simply because Walnut Hill LLC-but not it-might have been able to easily negotiate for parking at or by a route through the Chestnut Hill or Monroe Street properties.
TriMet does not directly confront that difficulty with its argument but, instead, focuses on Walnut Hill LLC's reliance on Dept. of Transportation v. Pilothouse 60, LLC , 220 Or. App. 203, 185 P.3d 487, rev. den. , *425 345 Or. 417, 198 P.3d 941 (2008), to support its contention that TriMet's proffered evidence was irrelevant to valuation. In Pilothouse 60 , the condemnor sought to acquire interests in two adjoining parcels of property. A motel was located on one of the parcels; that first parcel wrapped around two sides of the other parcel, which was mostly paved but also had a vacant restaurant on it. Id. at 206-07, 185 P.3d 487. The restaurant parcel was owned by Pilothouse 60, LLC, and the motel parcel was owned by the two individuals who were the sole owners of that LLC. Id. at 208, 185 P.3d 487. More than once, the condemnor made a lump-sum, unitary offer to acquire a strip of land that crossed both properties; Pilothouse 60 and the individual owners rejected *747 those offers. Id . In a subsequent condemnation action, the question arose whether the fact that the condemnor had made unitary, lump-sum offers for interests in both properties-rather than making separate offers for the interest in each of the two properties-meant that the offers did not satisfy the condemnor's statutory obligations to "make a written offer to the owner * * * to purchase the property or interest * * *." ORS 35.346(1).
Our analysis in Pilothouse 60 included consideration of the "unity principle," which generally applies in cases where the condemnor severs one physically separated tract of land from another. Id. at 209, 185 P.3d 487. Although depreciation of a severed tract generally must be determined without consideration of whether the tracts from which it has been severed also have lost value, application of the "unity principle" leads to a different result "when it can be shown that [the] two physically separated tracts of land are so joined as to constitute a single parcel." City of Salem v. H.S.B. , 302 Or. 648, 653, 733 P.2d 890 (1987). "Although there is no uniform rule for determining whether separate tracts of land are so joined, two important factors are unity of use and unity of ownership." Pilothouse 60 , 220 Or. App. at 210, 185 P.3d 487. In the absence of either, "joinder does not exist and severance damages for the tract of land not directly injured by the taking are inappropriate." H.S.B. , 302 Or. at 653, 733 P.2d 890. In Pilothouse 60 , we held that the "unity principle" is not limited to severance cases, but also applies where (as in that case) a condemnor seeks to acquire interests in multiple adjoining properties. 220 Or. App. at 212, 185 P.3d 487. We further held that the alleged "unity *426 of control" between Pilothouse 60, LLC, which owned one parcel, and the individual owners of the other parcel did not equate to "unity of ownership" that might allow the two parcels to be treated "as a single, larger parcel." Id. at 213, 185 P.3d 487.
On appeal, TriMet accurately observes that Pilothouse 60 "was not an evidence case." Based largely on that distinction, TriMet argues that Pilothouse 60 was not pertinent to the question before the trial court; it further suggests that the trial court erred by relying on that case to exclude evidence of the relationship among the entities that owned the Walnut Hill, Monroe Street, and Chestnut Hill properties.
We disagree. Nothing in the record suggests that the trial court misunderstood the principles that guided its determination of whether TriMet's proffered evidence was admissible. TriMet argued to the trial court that it was not trying to establish that the multiple properties constituted a single, larger parcel for purposes of valuation. Rather, it asserted, it hoped to use the evidence of the relationship among the owners of those properties to show that a purchaser of the Walnut Hill property would believe it could obtain parking access from one of the other properties because "it is in common ownership." Walnut Hill LLC contended that TriMet should not be allowed to present that evidence for several reasons, including that it could mislead the jury into thinking that a purchaser could negotiate for parking access more easily because of the seller's relationship to neighboring property owners. In doing so, Walnut Hill LLC relied in part on the holding in Pilothouse 60 that "common ownership" is not established simply because an LLC owns one parcel and the owners of the LLC own the neighboring parcel. Nothing about the trial court's exclusion of the evidence suggests that it misunderstood the parties' arguments or the limited extent to which Pilothouse 60 applied to the question before it. To the contrary, the trial court's ruling is best understood as rejecting any implicit suggestion by TriMet that the relationship between the owners of the multiple properties meant that the jury should have been permitted to conceive of those properties as forming a single, larger parcel when they considered the extent to which the loss of parking at Walnut Hill reduced the value *427 of that property. Although TriMet has disclaimed intent to make any such argument, it is difficult to perceive any other reason it believed the evidence to be helpful to its case.[3] *748 More to the point-given that determination of relevance is a legal question[4] -nothing in Pilothouse 60 could support an argument that the kind of evidence TriMet wished to offer would be relevant to the valuation question. That is, nothing in Pilothouse 60 suggests that evidence of the relationship between owners of the condemned property and neighboring properties could properly inform "what a hypothetical but willing purchaser would pay for the property." Hughes , 162 Or. App. at 420, 986 P.2d 700. Neither Pilothouse 60 itself nor the way in which it was discussed in conjunction with the motions in limine establishes that the trial court erred by excluding TriMet's proffered evidence.
Finally, as noted, TriMet contends that our decision in Jeans , 80 Or. App. 582, 723 P.2d 344, mandates admission of the evidence about the relationships among the owners of the Walnut Hill, Monroe Street, and Chestnut Hill properties. Jeans , like this case, involved a dispute over the determination of just compensation in a condemnation proceeding that resulted in a partial taking of a parcel. The condemnation eliminated one of two access points to a 13-acre parcel zoned mainly for commercial development. Id. at 584, 723 P.2d 344. The condemnor had sought to introduce evidence that it believed "would show that the highest and best use of the [remaining part of the] property would be to develop it in conjunction with adjacent land, which [the owners of the condemned property interests] do not own." Id. We held that the trial court correctly excluded that evidence, even though it included statements by one of the property owners that the owners *428 had already agreed to join an effort "to put this property together," apparently with the adjoining properties. Id. at 585, 723 P.2d 344. Given "the uncertainty as to whether development would come to fruition," evidence of that possible joint development was "not material to the issue of what value [the partly condemned] property had immediately before and immediately after the taking." Id . at 586, 723 P.2d 344. Put differently, although "possible future development" sometimes may be taken into account in valuation, the evidence that the condemnor sought to introduce in Jeans fell into the category of evidence that is immaterial because it was "so speculative as to confuse or mislead the jury into considering issues beyond those properly before the court." Id. at 585, 723 P.2d 344.
Here, TriMet relies on our observation in Jeans that "possible future development" can be taken into account in valuation when it is not "so speculative as to confuse or mislead the jury." TriMet contends that the availability of parking, at least at Chestnut Hill, was not speculative because it was undisputed "that tenants at Walnut Hill currently enjoyed parking at Chestnut Hill, a property effectively controlled by the same people who controlled Walnut Hill." Again, however, TriMet does not explain how evidence about what the current owner of the Walnut Hill property is able to accomplish in terms of parking informs the question of what a prospective purchaser of that property would be able to accomplish-and that is what matters for valuation. We conclude that the ownership evidence would not have supported (or somehow otherwise been relevant to) a nonspeculative argument that a hypothetical purchaser of the Walnut Hill property would have been able to obtain parking either at Chestnut Hill or through access across the Monroe Street properties.
In sum, the trial court did not err by granting Walnut Hill LLC's motions in limine to exclude TriMet's evidence of the relationship among the owners of the three properties. We therefore affirm the general judgment. Because TriMet's challenge to the supplemental judgment awarding costs and *749 attorney fees is contingent on it prevailing on the merits, we also affirm the supplemental judgment.
Affirmed.

Although the parties disputed the extent to which the garage had actually been used for vehicle parking before the light-rail line was constructed, and the ease with which it could safely be used for that purpose, that dispute is immaterial to the issues on appeal.

The children of George and Marie Corti own the remaining 48 percent of Chestnut Hill Corporation.

Indeed, TriMet argued at one point to the trial court that the ownership evidence was relevant because the highest and best use for the properties would be "to put them together" because "they are much more valuable [together] than they are individually." It was immediately following that argument that the trial court expressly stated that the Walnut Hill parcel "should be treated separately, not part of a larger group."

We understand the trial court to have excluded the evidence as immaterial or irrelevant. We therefore review the ruling for legal error. Alderwoods , 358 Or. at 517-18, 366 P.3d 316. However, to the extent that the trial court's ruling here may be viewed as having any discretionary aspect (for example, to the extent it embodies a determination that the evidence would confuse the jury), its decision to exclude the ownership evidence would not be an abuse of that discretion.